Bryan Ward WHITEPIPE, Petitioner,

v.

Douglas WEBER, Warden, South Dakota State Penitentiary, Respondent.

No. CIV 06–3018.

United States District Court, D. South Dakota, Central Division.

Nov. 29, 2007.

Bryan Ward Whitepipe, Sioux Falls, SD, Pro Se Petitioner.

Gary R. Campbell, Assistant Attorney General, Pierre, SD, for Respondent.

## ORDER ADOPTING REPORTS AND RECOMMENDATIONS AND ORDER OF DISMISSAL

CHARLES B. KORNMANN, District Judge.

Petitioner pleaded guilty to rape and was sentenced to 20 years imprisonment on March 18, 2003. He appealed his conviction and sentence to the South Dakota Supreme Court and the Supreme Court affirmed on January 20, 2004. He filed a petition for a writ of habeas corpus in state court. The petition was denied and he appealed to the South Dakota Supreme Court. The Supreme Court affirmed on July 13, 2006. Petitioner timely filed a petition for writ of habeas corpus under 28 U.S.C. § 2254.

The Court submitted the above-entitled matter to U.S. Magistrate Judge Mark A. Moreno and the magistrate judge submitted his report and recommendation to the Court on December 5, 2006, Doc. 15. The report and recommendation was served on the petitioner as required by 28 U.S.C. § 636. Petitioner filed objections, Docs. 17, 32, and a motion to stay this matter to allow him to return to state court to exhaust his unexhausted claims. The motion to stay was referred to Magistrate Moreno

and the magistrate submitted a supplemental report and recommendation to the court on May 21, 2007, Doc. 35. The petitioner filed objections to the supplemental report and recommendations. Doc. 40. I have conducted a *de novo* review of the record.

I do not, of course, conduct a *de novo* review of the factual and legal determinations as made by the state courts. I do consider whether the state courts' adjudications "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Judge Moreno adequately and correctly sets forth the standards to be applied in this proceeding.

I have fully considered this entire matter, together with all the files and records herein. I agree with the magistrate that the only possible ground for relief would be the state court's method of summoning additional jury panel members and whether trial counsel's failure to object to the procedure constituted ineffective assistance of counsel. All other grounds for relief are defaulted or otherwise barred because they lack any possible merit. I agree that no evidentiary hearing should have been conducted and that counsel should not have been appointed. Petitioner has done a good job of setting forth his claims and the claims are readily understood.

Petitioner claims a violation of SDCL 16–13–42 in connection with the summons of additional jurors. Actually, the trial court proceeded under SDCL 16–13–43, claiming that the panel of petit jurors "would be" exhausted by challenges. A *pro bono* memorandum prepared by petitioner's state habeas counsel also pointed out that the state trial court had proceeded under SDCL 16–13–43. This would be,

however, at most a violation of state law and not of federal law. SDCL 16–13–43 speaks of the panel being exhausted. Thus, the trial court "jumped the gun" in anticipating that the panel would be exhausted before juror selection had begun. SDCL 16–13–43 provides that the court is to order the sheriff, deputy sheriff, or coroner to summon, without delay, a sufficient number of additional jurors. The trial court, with the agreement of both lawyers and the defendant, did not want to use the sheriff directly since he was almost certain to be called as a witness for the prosecution. The trial court ordered the sheriff's secretary (who may also do secretarial work for the prosecuting attorney) to telephone citizens from various communities within the county to report for duty. This procedure was very questionable since jurors are not to be selected based on whether or not the juror has a telephone. We also do not know whether the persons reached by telephone would have been "persons possessing the qualifications of jurors", as required by the statute. We do not know whether the secretary identified herself as calling on behalf of the sheriff or what she told those she reached by telephone. I assume she did advise who she was and why she was calling on behalf of the sheriff. The fact that the judge and the lawyers had proceeded in this fashion in another case would be entirely immaterial. The matter could and should have been handled more carefully, in strict compliance with the statutes. I do not endorse or approve what was done here. I disagree with the statement by the magistrate that it was necessarily important that the sheriff did not personally execute the trial court's order but rather delegated this responsibility to his secretary. That procedure certainly lessened the possibility of prejudice but does not answer all questions as to what was done. The secretary is alleged to have gone "randomly" through the telephone book. What

that means I do not know. There is, however, no evidence or any claim that the additional panel members were selected subjectively. The only evidence is that the panel members were selected objectively. There is no claim or evidence that the sheriff or the secretary were "guilty" of any actual impropriety.

Petitioner has not produced any reliable data or statistics relating to Gregory County, South Dakota, or as to the jury selection in this case. I suspect, but do not know for sure, that more Native Americans than non-Native Americans do not have telephones in Gregory County. I will assume that to be true. We know also that petitioner did not, before the state trial court, object to the supplementation of the jury panel, raise any other "structural" error, or complain previously that the supplementation of 30 additional jurors caused him to decide to plead guilty. He made no such claim in connection with his motion to withdraw his guilty plea or on direct appeal to the South Dakota Supreme Court. The state courts found that he pled guilty because he obtained a favorable plea agreement and that his plea had nothing to do with the jury panel supplementation. These determinations are not unreasonable applications of clearly established federal law as established by the United States Supreme Court. They are also not unreasonable in light of the evidence presented in the state proceedings.

It is not surprising that almost all of the cases dealing with so-called "bystander jurors" stem from the Eighth Circuit. *Coury v. Livesay*, 868 F.2d 842 (6th Cir. 1989), discusses the Eighth Circuit cases rather comprehensively. This includes *Henson v. Wyrick*, 634 F.2d 1080 (8th Cir.1980), *cert. denied*, 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981) (a case where the sheriff personally selected his acquaintances as additional panel members

and seven of them actually served on the jury), *Holt v. Wyrick,* 649 F.2d 543 (8th Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982) (a case where the additional panel members were selected by a sheriff from a neighboring county on an objective basis), *Anderson v. Frey,* 715 F.2d 1304 (8th Cir.1983), *cert. denied,* 464 U.S. 1057, 104 S.Ct. 739, 79 L.Ed.2d 198 (1984) (a case where five deputy sheriffs were used to summon additional jurors, without any evidence of actual impropriety by the sheriff, although the sheriff had been involved in the investigation of the alleged crime and was obviously the immediate supervisor of the deputies, the court finding that there was potential prejudice), *Russell v. Wyrick,* 736 F.2d 462 (8th Cir.1984), *cert. denied,* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 346 (1985) (a case in which the Court of Appeals rejected the argument that *Anderson* stood for the proposition that the participation of any individual possessing an institutional interest in the prosecution is sufficient to constitute a constitutional violation, the bottom line being that each case must be analyzed to determine the objectivity of the selection criteria and the extent of the involvement of the "interested official"), and *Cody v. Solem,* 755 F.2d 1323 (8th Cir.), *cert. denied,* 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985) (a case where the coroner selected the bystander juror and the case went to trial with the bystander as a member of the jury). In *Cody,* the bystander juror was not selected by "an interested official or his or her subordinates or professional associates", quoting from *Anderson,* 715 F.2d at 1309. Even if the sheriff's secretary was an "interested official", this only tells us that *due* process rights *may* have been violated. *Cody,* at 1334, relying on *Anderson,* 715 F.2d at 1309. Like the magistrate, I am unable to find that petitioner's due process rights were violated.

Having said all this, the bottom line is that the defendant pled guilty and did not continue with the trial. As the magistrate points out on page 1102 of Doc. 15, in general, once a defendant has pled guilty, the defendant cannot raise independent claims involving constitutional deprivations, including claims based on the legality of the jury selection process. That is true here as well.

For what it is worth, probably nothing, my experience as a trial court judge handling many hundreds of cases since 1995 involving assaults of a Native American woman or Native American child tell me that a Native American male and his attorney would not want very many Native American women serving on a jury in a case of this type. They know too much and have seen or heard too much, assuming even that they have not personally been assaulted. Many reported studies have pointed out the very high rate of sexual assaults of Native American women and children as compared with non-Native American women and children.

The petition should be denied. The report and recommendation and the supplemental report and recommendation should be adopted. All objections of the defendant should be overruled.

I also agree that this case is not appropriate for any further "stay-and-abeyance" as allowed for in *Rhines v. Weber,* 544 U.S. 269, 275, 125 S.Ct. 1528, 1534, 161 L.Ed.2d 440 (2005). The United States Supreme Court held in *Rhines* that:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.

Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Rhines v. Weber,* 544 U.S. at 277, 125 S.Ct. at 1535.

Petitioner's claims that certain statements should have been suppressed and that the prosecutor committed a *Brady* violation were waived by his guilty plea. *O'Leary v. United States,* 856 F.2d 1142, 1143 (8th Cir.1988) (a defendant who pleads guilty "waives all challenges that do not relate to jurisdiction"). Both claims were either abandoned or unexhausted in state court. Stay and abeyance as to these claims is inappropriate because they are plainly meritless.

Petitioner's claim that the filing of an habitual offender information violated Due Process was also unexhausted. I adopt the magistrate's conclusion that this claim is frivolous. Thus, stay and abeyance is also inappropriate as to this claim.

Petitioner's claims that he should have been allowed to withdraw his guilty plea and that his guilty plea was not knowing and voluntary were not exhausted. Nonetheless, the magistrate concluded that the claims are meritless and I adopt that conclusion. Stay and abeyance is, again, inappropriate for meritless claims.

Petitioner's claim that the sentencing judge improperly considered a psycho-sexual evaluation in imposing a sentence does not raise the violation of a federal Constitutional or statutory right. The claim is therefore not cognizable in a federal habeas proceeding. 28 U.S.C. § 2254(a). Again, stay and abeyance is not available as to this claim.

The magistrate concluded that petitioner's claim that he pleaded guilty due to racial animus was frivolous. I adopt that conclusion. Stay and abeyance is inappropriate for this meritless claim.

Petitioner contends that certain of his claims were not exhausted because counsel was ineffective for failing to raise the claims. He did not raise his ineffective assistance claims in his state court habeas matter and therefore ineffective assistance of counsel is an unexhausted claim. The magistrate concluded that the underlying errors were meritless. I adopt that conclusion. It would therefore be futile for petitioner to exhaust his ineffective assistance claims as to those alleged errors. Stay and abeyance is not appropriate for his ineffective assistance of counsel claims.

In any event, Judge Moreno granted Whitepipe more than 10 weeks in which to present his unexhausted federal claims to the state court. He failed to do so. Good cause does not exist.

I have conducted a *de novo* review of the magistrate's report and recommendation as to stay and abeyance and find that this is not one of the limited circumstances where stay and abeyance is appropriate.

Now, therefore,

IT IS ORDERED, as follows:

1. The petition for a writ of habeas corpus, is denied and dismissed with prejudice.

2. The report and recommendation, Doc. 15 and the supplemental report and recommendation, Doc. 35, are adopted.

3. Petitioner's objections, Docs. 17, 32, and 40 are overruled.

4. The motion for a stay and abeyance, Doc. 24, is denied.

5. The motion for an extension of time to file objections, Doc. 37, is granted. The petitioner did file objections to the supplemental report and recommendation and those objections were considered.

2007 DSD 27

SUPPLEMENTAL REPORT AND REC-
OMMENDATIONS FOR DISPOSI-
TION OF PETITION UNDER 28
U.S.C. § 2254 FOR WRIT OF HA-
BEAS CORPUS BY A PERSON IN
STATE CUSTODY

MARK A. MORENO, United States
Magistrate Judge.

[¶ 1] After the instant case was re-
ferred, this Court issued a Report and
Recommendation, Docket No. 15, and then
amended it to correct an inadvertent typo-
graphical error, Docket No. 22. Petition-
er, Bryan W. Whitepipe ("Whitepipe"),
moved to extend the time period to reply
and file objections to the Report, Docket
Nos. 19, 25 and 28, and he was granted
leave to do so by both the District Court
and this Court, Docket Nos. 20, 25, 30.
Whitepipe also moved for a stay and abey-
ance order to allow him to present his
unexhausted federal claims to the state
court, Docket No. 24. Upon being direct-
ed by the District Court to handle the stay
and abeyance motion on a report and rec-
ommendation basis, this Court then gave
Whitepipe more than 10 weeks within
which to make the required showing under
*Rhines v. Weber,* 544 U.S. 269, 277–78, 125
S.Ct. 1528, 161 L.Ed.2d 440 (2005) for a
stay and abeyance order, Docket Nos. 26,
30. On March 19, 2007, Whitepipe filed
objections and a reply to the Report,
Docket No. 32. Respondent, Douglas
Weber, Warden of the South Dakota State
Penitentiary ("State") thereafter filed a
timely response to the objections and re-
ply, Docket No. 33.

[¶ 2] This Supplemental Report and
Recommendations augments the Report
and Recommendation previously issued by
the Court, a copy of which is attached
hereto and incorporated herein by refer-
ence, and addresses Whitepipe's objections
and assignments of error as well as his
stay and abeyance motion. The reason for
making the initial Report a part of this
Report and for attaching it herewith is to
provide a single consolidated set of the
Court's factual findings and legal discus-
sion for review. It is hoped that doing so
will make the review process easier and
help expedite the same.

I.

[¶ 3] Whitepipe first objects to the
Court's summary of the procedural history
of the case and its descriptions of the
various claims for relief he raised in state
and federal courts. The summary and
descriptions, however, are fairly recited,
fully supported by the record and need not
be disturbed. They shall therefore remain
as written.

II.

[¶ 4] Whitepipe next objects to the
Court's rendition of the relevant facts be-
cause, he says, the same is based on "false
statements deliberately presented as true"
and "perjured testimony." There is no
basis for this objection and Whitepipe
failed to properly develop the underpin-
nings for it in the state habeas proceed-
ings. His conclusory allegations that the
State's trial witnesses testified untruthful-
ly have little support in the record. In-
deed, medical records do not contradict, in
any significant manner, the testimony of
the victim, Margaret ("Mitzi") Hacker.
And, Gregory County Sheriff Damon
("Charlie") Wolf and Hacker's accounts of
what Whitepipe said, as well as Whitep-
ipe's own statements to Sheriff Wolf, are
at odds with the allegations Whitepipe now
makes.

[¶ 5] As for Whitepipe's allegation that
Hacker recanted in a telephone call to him
at the jail, there is no evidence to support
this allegation or, for that matter, that
such a call was ever made. Instead, the
record shows that Whitepipe called Hacker

from jail and offered to buy her groceries if she did not testify against him.

## III.

[¶ 6] Whitepipe objects to the Court's determinations that the appointment of counsel and an evidentiary hearing are not warranted or necessary.

[¶ 7] Whitepipe has no constitutional or statutory right to counsel in a habeas proceeding such as this one. *Morris v. Dormire*, 217 F.3d 556, 558 (8th Cir.), *cert. denied*, 531 U.S. 984, 121 S.Ct. 439, 148 L.Ed.2d 445 (2000). His § 2254 petition does not raise complex legal and factual issues or ones that require further fact investigation. *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir.1997); *Hoggard v. Purkett*, 29 F.3d 469, 471–72 (8th Cir.1994). He has clearly demonstrated, through his submissions, a threshold ability to articulate his claims and to represent himself.[1] *McCall*, 114 F.3d at 756.

[¶ 8] Similarly, the factual basis for some of Whitepipe's claims was sufficiently developed in state court. As to these claims, a federal court must defer to the state court's findings of fact. 28 U.S.C. § 2254(e)(1).

[¶ 9] With respect to those claims he failed to develop in state court, Whitepipe has no right to an evidentiary hearing because he was unable to satisfy the requirements of § 2254(e)(2)(A). *Schriro v. Landrigan*, —— U.S. ——, ——, 127 S.Ct. 1933, 1943, 167 L.Ed.2d 836 (2007). Regardless, Whitepipe has failed to establish that he has a convincing claim of innocence under § 2254(e)(2)(B). *see Williams v. Taylor*, 529 U.S. 420, 435, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), and that, in any

event, such a hearing would enable him to develop a factual record that would entitle him to habeas relief under the Anti–Terrorism and Effective Death Penalty Act (AEDPA). *Schriro*, 127 S.Ct. at 1940–44.[2]

[¶ 10] For these reasons, and those explained earlier in its Report and Recommendation, Docket No. 15 at 1094–97, the Court believes that neither the appointment of counsel nor an evidentiary hearing would be meaningful or is called for in this instance.

## IV.

[¶ 11] As a further objection, Whitepipe seems to suggest that state court factual and legal determinations are subject to *de novo* review by federal courts. Whitepipe, however, is not entitled to relief on any of his claims that were adjudicated on the merits in state court unless the adjudication of such claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

[¶ 12] Here, the state court did not apply a rule that contradicts governing law (established by the Supreme Court) or, when confronted with a set of facts that were materially indistinguishable from a decision of the Supreme Court, nonetheless arrive at a different result. *See Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir.2007). Nor did the state court apply the governing legal rule incorrectly and in an objectively unreasonable manner. *Penry*, 532 U.S. at

---

1. Whitepipe attended the University of South Dakota for two and-a-half years and, at the time of his sentencing, had only 12 credits left to complete his degree in Criminal Justice/Political Science.

2. Because "the record refutes [Whitepipe's] factual allegations [and] otherwise precludes habeas relief [the Court] is not required to hold an evidentiary hearing." 127 S.Ct. at 1940.

793, 121 S.Ct. 1910; *Collier*, 485 F.3d at 421.

■ [¶ 13] While the factual findings of the state court may be challenged in a § 2254 proceeding, they are subject to a much more deferential standard of review. *Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir.2001). The state court's factual findings are "presumed to be correct" and can only be rebutted by "clear and convincing evidence" to the contrary. *Rice v. Collins*, 546 U.S. 333, 126 S.Ct. 969, 974, 163 L.Ed.2d 824 (2006); *Kinder*, 272 F.3d at 538. Having applied these precepts to the case at hand, the Court is confident that the adjudications made in state court did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence that was presented. *See Rice*, 126 S.Ct. at 974.

[¶ 14] Exercising the requisite "limited and deferential review" that is called for by the AEDPA, *see Evenstad v. Carlson*, 470 F.3d 777, 781–82 (8th Cir.2006), the Court finds and concludes that Whitepipe is not entitled to federal habeas relief on any of his claims.

## V.

[¶ 15] Whitepipe's next objection, that Sheriff Wolf gave perjured testimony and forged Whitepipe's name to the Miranda consent card, is wholly without merit. Whitepipe's perjury/forgery claims were waived when his guilty plea was accepted by the trial court, *see United States v. Smith*, 422 F.3d 715, 724 (8th Cir.2005), cert. denied, 546 U.S. 1127, 126 S.Ct. 1112, 163 L.Ed.2d 921 (2006); *State v. Hoeft*, 1999 SD 24, ¶ 12, 594 N.W.2d 323, 326, and are now defaulted and unreviewable [3], *see Clay v. Norris*, 485 F.3d 1037, 1038–41 (8th Cir.2007); *Interiano v. Dormire*, 471 F.3d 854, 856–57 (8th Cir.2006); *Armstrong v. Iowa*, 418 F.3d 924, 925–26 (8th Cir.2005), cert. denied, 546 U.S. 1179, 126 S.Ct. 1351, 164 L.Ed.2d 63 (2006). In addition, given the state court record, the evidence that Whitepipe's guilty plea was knowing, voluntary and intelligent and made after a valid waiver of his rights and the lack of any credible evidence to substantiate his perjury and forgery claims, there is no reason to delve into and/or overturn the state court's factual and legal determinations and grant him § 2254 relief.

## VI.

[¶ 16] Whitepipe next objects to the Court's recommendation that he be denied relief on his habitual offender claim. Whitepipe claims that because he was never convicted of the underlying forgery offense (that was used as a basis for the habitual offender charge) the trial court lacked subject matter jurisdiction over the charge. Whitepipe also claims that the state's at-

---

**3.** Whitepipe contends that the State's failure or refusal to provide him with transcripts of the suppression hearing and arraignment in Gregory County Cr. No. 01–39 (the forgery case) is sufficient "cause" to excuse his defaulted claim. Transcripts of these proceedings are not in the record, but could have been ordered by him before his change of plea in Gregory County Cr. No. 02–21 (the rape case) or his state habeas hearing when he had counsel representing him. Without knowing what was said during the proceedings and why transcripts of them were never prepared, the Court is in no position now to decide whether the Supreme Court's "cause", or for that matter, "prejudice" requirements have been met. *See Coleman v. Thompson*, 501 U.S. 722, 752–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("cause"); *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ("prejudice"); *see also Murray v. Carrier*, 477 U.S. 478, 485–92, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Whitepipe also contends that there is evidence (testimony from Sheriff Wolf and a tape recording) "proving" that Whitepipe was never advised of his Miranda rights. The record, however, *is devoid of any such evidence.*

torney engaged in prosecutorial misconduct by vindictively "using the habitual offender charge to intimidate [him] into accepting a plea agreement." He further claims that trial and appellate counsel were ineffective by not raising these claims in state court.

[¶ 17] Whitepipe's ineffective assistance claim, however, is procedurally barred and not cognizable. Whitepipe failed to present the claim to the state court in a manner required by state procedural rules. And, the Supreme Court has made clear that a procedurally defaulted ineffective assistance of counsel claim cannot serve as "cause" to excuse the procedural default of another habeas claim unless the petitioner can satisfy the "cause and prejudice" standard of the ineffective assistance claim itself. *Edwards v. Carpenter*, 529 U.S. 446, 451–53, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).[4]

[¶ 18] Here, allowing Whitepipe to now use an ineffective assistance of counsel claim, which itself is procedurally defaulted, as "cause" to excuse his habitual offender claim, which he has also procedurally defaulted, would permit a federal court to take steps toward upsetting a state court conviction without giving the state courts an opportunity to address those claims in the first instance. *Edwards*, 529 U.S. at 451, 120 S.Ct. 1587; *Carrier*, 477 U.S. at 489, 106 S.Ct. 2639. To do so would undermine the very principles of comity and federalism the doctrines of ex-

haustion and procedural default are rooted in. It would likewise allow a habeas petitioner to escape from the deference accorded to state court rulings under the AEDPA, because there would be no state court ruling for a federal court to give deference to. Even more anomalous is that it would permit a claim for "cause", never raised before in state court, to occupy a more favorable position in federal court than a claim for "cause" that was raised in state court.

[¶ 19] In any event, Whitepipe's underlying due process claim has no merit. His guilty plea to the forgery offense led to a suspended imposition of sentence, a sentence the state court had the jurisdictional authority under the state Constitution to impose. *See State v. Schempp*, 498 N.W.2d 618, 620 (S.D.1993); *State v. Huftile*, 367 N.W.2d 193, 195–96 (S.D.1985); SDCL 23A–27–13. The South Dakota Supreme Court has plainly held that a suspended imposition of sentence may be used to enhance the penalty for a subsequent criminal law violation[5]. *State v. Marnette*, 519 N.W.2d 35, 38 (S.D.1994); *State v. Winchester*, 438 N.W.2d 555 (S.D. 1989). Whitepipe's habitual offender claim has no legal basis whatsoever.

[¶ 20] The same is true of Whitepipe's vindictive prosecution claim. This claim falls squarely within and is foreclosed by *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) and its

---

**4.** *Edwards* was not the first case to address the attempted use of an unexhausted claim as "cause" to excuse a procedural default. In *Carrier*, 477 U.S. at 488–89, 106 S.Ct. 2639, the Supreme Court observed that a habeas petitioner must present his claim of ineffective assistance of counsel to the state courts as an independent claim before he may use it to establish "cause" to excuse the procedural default of another claim. But it was not until *Edwards* that the Supreme Court ruled that the failure to properly exhaust the ineffective assistance claim actually resulted in the pro-

cedural default of the claim being asserted as "cause", thereby completely barring that claim from being used to excuse the procedural default of the underlying claim.

**5.** While it is true that under SDCL 23A–27–13 a defendant is not found guilty or convicted of an offense, even so, SDCL 23A–27–15 specifically provides that any suspended imposition of sentence imposed under § 23A–27–13 shall be considered a prior conviction for purposes of determining whether the defendant is a habitual offender.

progeny. In *Bordenkircher*, the defendant was charged with uttering a forged instrument in the amount of $88.30, an offense then punishable by a term of two to ten years in prison. 434 U.S. at 358, 98 S.Ct. 663. During plea negotiations, the prosecutor expressly indicated that if the defendant did not plead guilty to the forgery charge, the prosecutor would seek an indictment under a habitual offender statute which would subject the defendant to a mandatory sentence of life imprisonment. *Id.* at 358–59, 98 S.Ct. 663. The defendant refused to plead guilty, went to trial, was convicted of both the forgery and habitual offender charges and received a life sentence. *Id.* at 359, 98 S.Ct. 663. The Supreme Court, however, held that despite the threat made by the prosecutor during plea negotiations, the defendant's due process rights were not violated. *Id.* at 365, 98 S.Ct. 663. In doing so, the Court had this to say:

> It is not disputed here that [the defendant] was properly chargeable under the recidivist statute, since he had in fact been convicted of two previous felonies. In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity and enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." To hold that the prosecutor's desire to induce a guilty plea is an "unjustifiable standard," which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie

the concept of plea bargaining itself. Moreover, a rigid constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged.

*Id.* at 364–65, 98 S.Ct. 663 (footnote and citations omitted). Whitepipe, while faced with unpleasant alternatives, was nonetheless free to reject the plea bargain made by the state's attorney, continue on with his trial, and if convicted of one or more of the underlying offenses, insist on being tried on the habitual offender charge. There being no showing of presumptive or actual vindictiveness, Whitepipe cannot not succeed on his due process claim. *See United States v. Vest,* 125 F.3d 676, 678–79 (8th Cir.1997), *cert. denied,* 528 U.S. 1029, 120 S.Ct. 548, 145 L.Ed.2d 426 (1999); *Nguyen v. United States,* 114 F.3d 699, 704–05 (8th Cir.1997); *United States v. Jacobs,* 4 F.3d 603, 604–05 (8th Cir.1993).

## VII.

[¶ 21] Whitepipe objects to the Court's recommended disposition of his *Brady* claim. Whether couched in terms of a *Brady* violation or dressed up as an ineffective assistance of counsel one, Whitepipe has procedurally defaulted his claim and failed to provide the necessary "cause" and "prejudice" to excuse his default. *Edwards,* 529 U.S. at 450–53 & n. 3, 120 S.Ct. 1587; *Interiano,* 471 F.3d at 856–57; *Armstrong,* 418 F.3d at 925–26; Docket No. 15 at 1100–01 & nn. 7–8 (Report and Recommendation (Dec. 5, 2006)).

[¶ 22] Aside from this, the references Whitepipe points to, in the emergency room records, to further support his *Brady* argument, do little to aid his cause. Whether or not he had consensual sex with Hacker the day before kidnapping, raping and assaulting her, while relevant, is by no

means exonerating. The same is true of any discrepancy as to when Hacker lost consciousness given all that she went through. Moreover, the relevance of DNA results in this case, when Hacker was vaginally penetrated with a beer bottle is, at best, obscure. *See Evenstad*, 470 F.3d at 784–85 (evidence not material); *Collier*, 485 F.3d at 422–25 (no resulting prejudice).

[¶ 23] It must be remembered that Whitepipe pled guilty to a rape offense. His decision to do so was motivated by a desire to limit his exposure and was not the result of the withholding of material evidence of guilt or bad faith gamesmanship on the part of the state's attorney. Whitepipe's arguments fly in the face of his own prior state court statements and the evidence of record and provide him no basis for the issuance of a writ of habeas corpus. *Id.*

## VIII.

[¶ 24] Whitepipe objects to the Court's findings and recommended disposition of his claims relating to the propriety of the jury selection process and his decision to plead guilty to raping Hacker.

■ [¶ 25] Generally, a petitioner who enters a valid and unconditional guilty plea is barred from challenging a pre-plea constitutional violation in a subsequent federal habeas corpus proceeding. *Tollett v. Henderson*, 411 U.S. 258, 266–67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Iron Wing v. United States*, 34 F.3d 662, 664 n. 2 (8th Cir.1994). The petitioner, however, may contend that his guilty plea was not voluntary and intelligent, *see Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), or contend that the advice he received from his trial counsel was ineffective under the Sixth Amendment, *Tollett*, 411 U.S. at 267, 93 S.Ct. 1602; *McMann v.*

*Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). *See also Bass v. United States*, 739 F.2d 405, 406 (8th Cir.1984) ("after a guilty plea, the focus of collateral attack is limited to the nature of counsel's advice and the voluntariness of the plea"). As the Supreme Court has recognized:

> When a criminal defendant has solemnly admitted in open court he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standard set forth in *McMann*.

*Tollett*, 411 U.S. at 267, 93 S.Ct. 1602.

[¶ 26] Thus, only a petitioner's pre-plea claims that attack the voluntary and intelligent character of his plea are cognizable under § 2254. To the extent that the petitioner challenges his trial counsel's advice, he may only present claims relating to the plea advice; claims relating to pre-plea advice are barred. *Tollett*, 411 U.S. at 267, 93 S.Ct. 1602; *see also Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir.1994), *overruled on other grounds in Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

[¶ 27] Here, Whitepipe's ineffective assistance claims do not implicate the voluntary or intelligent nature of his plea, nor do they question trial counsel's advice regarding that plea. Although Whitepipe suggests that his counsel's purportedly deficient performance frustrated him, thus indirectly contributing to his strategic decision to plead guilty rather than continue on with his trial, such implications fall far short of alleging that counsel's *erroneous advice* contributed to an involuntary and unknowing plea. Whitepipe does not con-

tend that counsel's advice regarding him pleading guilty was erroneous.[6] Indeed, the record reflects that Whitepipe initiated plea negotiations and accepted the plea agreement, not because of inaccurate advice from his counsel, but rather, to avoid a sentence that potentially could have been much longer than the one he received. As such, any pre-plea irregularities Whitepipe now alleges were waived when he entered his guilty plea in state court. *Tollett*, 411 U.S. at 266–67, 93 S.Ct. 1602; *see also Thundershield v. Solem*, 565 F.2d 1018, 1026–27 (8th Cir.1977), *cert. denied*, 435 U.S. 954, 98 S.Ct. 1585, 55 L.Ed.2d 805 (1978).[7]

[¶ 28] Regardless, Whitepipe's claim that his guilty plea was coerced by and the product of a corrupt jury selection process, a process which he never objected to, is inconsistent with both his behavior in court when he entered his plea and the testimony of his trial counsel at the state habeas hearing. The jury selection procedure

that was utilized did not have a racially skewing effect and had no influence on Whitepipe's decision to plead guilty. The state habeas court found that Whitepipe's testimony to the contrary was not credible. Whitepipe's right to a fundamentally fair trial was not violated. *Cody v. Solem*, 755 F.2d 1323, 1333–35 (8th Cir.), *cert. denied*, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *see also Coury v. Livesay*, 868 F.2d 842, 845 (6th Cir.1989). Nor can it be said on this record, especially given the lack of any data relating to Gregory County or to Whitepipe's own jury, that he was a victim of racial underrepresentation or discrimination. *Singleton v. Lockhart*, 871 F.2d 1395, 1397–99 (8th Cir.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989); *State v. Aesoph*, 2002 SD 71, ¶¶ 43–45, 647 N.W.2d 743, 757–58.

[¶ 29] Whether by virtue of the rule in *Tollett* or based on an insufficient showing on the merits, Whitepipe cannot prevail on any of his jury selection claims.[8]

6. Whitepipe was able to avoid the kidnapping, aggravated assault and all but one of the rape charges and a potential sentence of life imprisonment without parole. Under these circumstances, it would be extremely difficult, if not impossible, for Whitepipe to establish that trial counsel's implicit advice to accept a plea agreement rather than proceed to trial and thereby risk multiple convictions and a much longer sentence, was deficient as a matter of fact and law.

7. In its initial Report and Recommendation, the Court cited *United States v. Castillo*, 464 F.3d 988, 989–90 (9th Cir.2006) in its discussion and application of the *Tollett* rule. Docket No. 15 at 1102. On January 22, 2007 (approximately a month and-a-half after the Report was filed), the Ninth Circuit Court of Appeals entered an order granting rehearing *en banc* of the panel decision in *Castillo*, thereby making that decision of no precedential value. Accordingly, the Court withdraws its citation to *Castillo* at this time.

8. Through a *pro bono* memorandum prepared by his state habeas counsel, Whitepipe argues

that the trial court's use of SDCL 16–13–43, rather than SDCL 16–13–42, in the jury selection process was structural error. According to Whitepipe, his trial counsel should have objected to this error and counsel's failure to do so constituted ineffective assistance.

In conducting habeas review, a federal court is limited to deciding whether the decisions by the South Dakota courts were "contrary to, or involved an unreasonable application of, clearly established *Federal law*, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1) (emphasis added). The Supreme Court has stressed that the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to dicta, of this Court's decisions," and has cautioned that § 2254(d)(1) "restricts the source of clearly established law to this Court's jurisprudence." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Therefore, it is not enough for Whitepipe to argue that the state courts misapplied state law. To obtain habeas relief, he must be able to point to the Supreme Court precedent he thinks the state courts acted contrary to or unreasonably applied. *See Buchheit v. Norris*,

## IX.

[¶ 30] Whitepipe's objections relating to his guilty plea, including the State's purported failure to honor the provisions of the plea agreement, the trial court's alleged failure to advise him of his rights or the consequences of his guilty plea and the court's supposed "premature" acceptance of the plea, are legally and factually unfounded.

[¶ 31] At the outset, Whitepipe's claims have all been procedurally defaulted and he has failed to provide the "cause" and "prejudice" needed to excuse his default. *Ante* at 1081. The Court is therefore foreclosed from reviewing them.

[¶ 32] Addressing the merits nonetheless, the record indicates that the state's attorney lived up to the terms of the plea agreement and that Whitepipe unmistakably understood the terms of it and knowingly and voluntarily accepted the same. *Trussell v. Bowersox*, 447 F.3d 588, 591 (8th Cir.), *cert. denied*, —— U.S. ——, 127 S.Ct. 583, 166 L.Ed.2d 434 (2006); *United States v. Granados*, 168 F.3d 343, 345 (8th

459 F.3d 849, 853 (8th Cir.2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 1372, 167 L.Ed.2d 163 (2007); *Owsley v. Bowersox*, 234 F.3d 1055, 1057 (8th Cir.2000), *cert. denied*, 534 U.S. 903, 122 S.Ct. 233, 151 L.Ed.2d 168 (2001).

Whitepipe has not met his burden. The only Supreme Court decision he cites to in support of his position, *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), is not even a jury selection case. More importantly, the state courts' decisions were not "contrary to" and did not involve an "unreasonable application of," the holding in that case or other clearly established law of the Supreme Court. Instead, Whitepipe's argument boils down to an issue of state law (that, upon cursory review, does not appear to rest in his favor, *see State v. Iron Necklace*, 430 N.W.2d 66, 77 (S.D.1988); *State v. Christians*, 381 N.W.2d 214, 215 (S.D.1986); *State v. Rodden*, 86 S.D. 725, 726–27, 201 N.W.2d 232, 233–34 (1972); SDCL 16–13–31) and his attempt to recast the issue in a constitutional

Cir.1999); *Nguyen*, 114 F.3d at 703. The letter from the state's attorney (Whitepipe has belatedly tried to supplement the record with) concerned a pretrial plea offer (that he implicitly rejected by deciding to go to trial) and did not provide the basis for the actual plea agreement that was later entered into. There was no agreement that the State would recommend either an indeterminate sentence of between 5 and 15 years or a specific number of years, despite Whitepipe's attempt now to manufacture one. The state's attorney's own words at the sentencing hearing speak for themselves:

> [THE STATE'S ATTORNEY]: * * * As part of the plea agreement, I agreed that I would not stand up here and say he gets 25—I wanted him to get 25 years or 15, and *I will not do that*. I did reserve the right to present evidence, and make observations or argument to you at this hearing. And that's where I will confine my arguments to.[9]

(Emphasis added).

light (structural error and ineffective assistance of counsel) is unavailing.

9. At the rearraignment, the following exchange took place with respect to the State's sentencing recommendation:

> [DEFENSE COUNSEL]: * * * And that the State will not recommend a specific number of years at sentencing, and will not oppose any reasonable year request from the defense. I don't think we established reasonable, but I think we both have—I've talked to [Whitepipe] about what I think is reasonable and I think the State and I can handle that. And I fully—I have recommended that to [Whitepipe] and he has agreed to it. . . .
> THE COURT: All right.
> [THE STATE'S ATTORNEY]: Can I add something before we get too far? While I won't oppose a specific recommendation of years by the defense, I am still allowed to point out facts to the Court that I feel are aggravating circumstances for the crime

[¶ 33] Unlike the situation in *United States v. Crusco*, 536 F.2d 21, 24–26 (3d Cir.1976), there was no misunderstanding as to the maximum sentence Whitepipe faced (which he ultimately did not receive), nor was there a broken promise. *Trussell*, 447 F.3d at 591. The State did not stray from or go beyond that which it promised Whitepipe and thus he has no room to complain. *United States v. Miller*, 565 F.2d 1273, 1275 (3d Cir.1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978); *United States v. Bradford*, 461 F.Supp.2d 904, 917–18 (N.D.Iowa 2006); *see also Lafferty v. United States*, No. Civ. 05–30003, 2007 WL 1202747 at **3–4 (D.S.D. Apr. 20, 2007).

[¶ 34] As to the alleged deficiencies that occurred during Whitepipe's change of plea, the record reflects that the trial court painstakingly explained his constitutional rights to him and the consequences of entering a guilty plea. Whitepipe's insistence that the court accepted his plea before advising him of his rights is based on semantics, not facts. A review of the record reveals that after discussing the terms of the plea agreement with Whitepipe and his trial counsel, the court stated that it "would" accept the agreement. The court then advised Whitepipe of his rights and the consequences of pleading guilty,

determined that his plea was voluntary and that a factual basis existed for the same and after doing so, accepted his plea and found him guilty.

[¶ 35] Whitepipe asserts that his trial counsel lied, or at least misinformed him, about his parole eligibility. Whitepipe's bald and unsubstantiated assertions, however, are insufficient to satisfy *Strickland's* "prejudice" requirement. Whitepipe did not allege in his § 2254 petition that, had trial counsel correctly informed him about his parole eligibility date, he would have pled not guilty and insisted on going to trial.[10] Nor has he alleged, even in his objections, any special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty. Moreover, Whitepipe's mistaken belief that he would become eligible after serving six months of his prison sentence would seem to have affected not only his calculation of the time he likely would serve if sentenced under the plea agreement, but also his calculation of the time he likely would serve if he went to trial and was convicted. Inasmuch as Whitepipe has failed to allege, whether in his petition or otherwise, the kind of "prejudice" necessary to satisfy the second prong

---

that he is going to plead to today, as they are entitled to point out mitigating factors.
[DEFENSE COUNSEL]: Correct.

\* \* \*

THE COURT: Mr. Whitepipe, you've heard the plea agreement that was outlined by your attorney and the state's attorney; is that your understanding of the plea agreement?
THE DEFENDANT: Yes.

\* \* \*

THE COURT: It is also my understanding that the State will not recommend a number of years—the number of years in the Penitentiary. But that they will get to submit to the Court any argument or evidence as to any aggravating factors, is that your understanding?

THE DEFENDANT: Yes.
THE COURT: And then the State will not oppose your request for a reasonable number of years, and that you will have the opportunity to submit any evidence or testimony that mitigates this sentence. Is that your understanding?
THE DEFENDANT: Yes.
THE COURT: All right. The Court will accept that plea agreement.

10. In fact, Whitepipe's ineffective assistance/parole eligibility assertion was raised, for the first time, in his objections to the Court's initial Report and Recommendation. Contrary to Whitepipe's suggestion, the assertion was not contained in or used as a basis for seeking to withdraw his plea prior to sentencing.

of the *Strickland* test, he is not entitled to an evidentiary hearing, as he maintains, or to habeas relief on his ineffective assistance assertion. *See Hill*, 474 U.S. at 60, 106 S.Ct. 366; *see also Mabry v. Johnson*, 467 U.S. 504, 509–11, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *Buchheit v. Norris*, 459 F.3d at 852–53.

[¶ 36] Lastly, Whitepipe asserts that the trial court and trial counsel's failure to advise him of the state requirement that he would have to register as a sex offender, if convicted of the proffered rape offense, deprived him of his constitutional rights. Most courts have held, however, that registration as a sex offender, is a collateral, not a direct, consequence of a guilty plea that a defendant need not be advised of, *see Bargas v. Burns*, 179 F.3d 1207, 1216–17 (9th Cir.), *cert. denied*, 529 U.S. 1073, 120 S.Ct. 1686, 146 L.Ed.2d 493 (2000) (trial court not required to advise the defendant that he would have to appear before a state psychiatric panel for an evaluation prior to being released on parole); *Gore v. Andrews*, No. 96–6093, 1996 WL 627323 at *2 (10th Cir. Oct. 30, 1996) (the sex offender registration requirement is a collateral consequence of the defendant's plea and counsel's failure to inform him of it cannot rise to the level of ineffective assistance); *State v. Timperley*, 1999 SD 75, ¶ 17, 599 N.W.2d 866, 869 (trial court's failure to advise the defendant about registration as a sex offender is not grounds for withdrawal of a guilty plea), and the Court agrees with their rationale for doing so. In view of the collateral nature of the registration requirement, it

matters not whether Whitepipe was informed of the requirement.

## X.

[¶ 37] Whitepipe makes a number of objections concerning the sexual offender evaluation the trial court ordered that he submit to before sentencing. Whitepipe, however, has failed to show that the court erred, much less committed error that infringed on a specific constitutional protection or that was so prejudicial as to amount to a denial of due process. *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir.), *cert. denied*, ⸺ U.S. ⸺, 127 S.Ct. 725, 166 L.Ed.2d 565 (2006); *see also Evenstad*, 470 F.3d at 782–84. The court was authorized under state law to order the evaluation, *see* SDCL 23A–27–6; *State v. Arguello*, 502 N.W.2d 548, 556 (S.D.1993); *State v. Grosh*, 387 N.W.2d 503, 508–09 (S.D.1986), and the rules of evidence (which Whitepipe claims were not followed) do not apply to state sentencing proceedings, *see* SDCL 19–9–14(4); *State v. Stevenson*, 2002 SD 120, ¶ 15, 652 N.W.2d 735, 740–41; *State v. Huettl*, 379 N.W.2d 298, 304 (S.D.1985); *see also* Fed. R.Evid. 1101(d)(3).[11]

[¶ 38] The objections raised are grounded, in large part, on Whitepipe's contention that his participation in the preparation of a presentence investigation report, which included a sexual offender evaluation, violated his Fifth, Sixth and Eighth Amendment rights. These contentions, however, were at no time ever presented to the state court and are procedurally barred now from review. *Ante* at

---

11. Whitepipe's reliance on *United States v. White Horse*, 177 F.Supp.2d 973 (D.S.D. 2001), *aff'd*, 316 F.3d 769 (8th Cir.), *cert. denied*, 540 U.S. 844, 124 S.Ct. 116, 157 L.Ed.2d 80 (2003) is misplaced. There, testimony concerning the defendant's Abel Assessment evaluation was sought to be admitted "during the guilt phase of his case in chief," 177 F.Supp.2d at 974, not at sentencing as in

Whitepipe's case. The former is subject to more strict evidentiary and procedural limitations than the latter. *See United States v. Wise*, 976 F.2d 393, 397–405 (8th Cir.1992) (*en banc*), *cert. denied*, 507 U.S. 989, 113 S.Ct. 1592, 123 L.Ed.2d 157 (1993); *see also United States v. Luciano*, 414 F.3d 174, 178–80 (1st Cir.2005).

1081. Whitepipe's Fifth (and related *Miranda* ) and Sixth Amendment contentions are, in any event, plainly without merit. *State v. Kauk,* 2005 SD 1, ¶¶ 8–19, 691 N.W.2d 606, 608–11 (citing numerous federal cases); *see also United States v. Archambault,* 344 F.3d 732, 736 n. 4 (8th Cir.2003) (the Sixth Amendment does not apply to routine presentence interviews); *United States v. Leonti,* 326 F.3d 1111, 1119–20 (9th Cir.2003) (relying on the non-adversarial nature of presentence interview). Likewise, his Eighth Amendment contention has no factual or legal basis and must fall by the wayside as well.[12] Because Whitepipe has failed to establish a specific federal constitutional violation or undue prejudice, and because the contentions he now makes are procedurally barred or have no merit, his objections must be overruled.

## XI.

■ [¶ 39] Whitepipe's objections to the Court's recommended disposition of his racial animus claims must also be overruled because they are based on supposition and conjecture, are contradicted by the record and have no merit whatsoever. Contrary to his claims, the trial court did not refuse to release Whitepipe on bond because he is Indian, but rather, did so because:

1. He was charged with several violent offenses (rape, kidnapping and aggravated assault) and with being a habitual offender;

2. He was on felony probation at the time he allegedly committed the offenses;

3. He contacted Hacker, while in jail, and asked her to remain silent about the offenses;

4. He was a risk of flight; and

5. He was a danger to one or more persons or to the community.

The seriousness of the offenses charged, an alleged probation violation, obstruction or intimidation of a perspective witness, risk of flight and dangerousness to others are all relevant considerations in determining whether a defendant should be detained or released on bail. *United States v. Montalvo–Murillo,* 495 U.S. 711, 719–22, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990); *United States v. Salerno,* 481 U.S. 739, 746–55, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Bell v. Wolfish,* 441 U.S. 520, 534 & n. 15, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also* 3 W. LaFave, J. Israel & N. King, *Criminal Procedure,* §§ 12.3(a), (c)–(g), § 12.4(e) (2d ed. 1999 & 2007 Supp.). Beyond this, the record reflects that Whitepipe was given a suspended imposition of sentence for his forgery offense, Which is hardly an indication of racial animosity toward him. And, despite the violence he perpetrated on Hacker over the several-day period of captivity, the court nonetheless did not impose the maximum penalty on him for the rape crime he pled guilty to.

[¶ 40] Racism played no part in Whitepipe's state case. He has failed to make any credible showing that racial bias affected his prosecution. *United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). This being the case, Whitepipe's objections, and the claims upon which they are based, cannot be sustained.

## XI.

[¶ 41] In the last numbered paragraph of his objections, Whitepipe reiterates his earlier request, made in a separate motion, that his federal petition be held in abeyance to allow him to present his unex-

---

12. In spite of what he alleges, Whitepipe was not prohibited from presenting mitigating evidence relating to the "range and severity of his past criminal conduct, his age and the circumstances surrounding the crime for which he [was] being sentenced."

hausted claims in state court. The Court delayed its decision on Whitepipe's request to afford him an opportunity to make the required showing, under *Rhines,* 544 U.S. at 277–78, 125 S.Ct. 1528; *see also Akins v. Kenney,* 410 F.3d 451, 456 (8th Cir. 2005).

[¶ 42] The AEDPA requires that a habeas petitioner give the state court the first opportunity to consider his federal constitutional claims. *See* 28 U.S.C. § 2254(b). This long-standing exhaustion requirement is not jurisdictional, but "reflects the policy of federal-state comity . . . designed to give the [s]tate an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("the rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of the federal district court's overturning a state-court conviction without the state courts having an opportunity to correct the constitutional violation in the first instance.") (alteration in original). The State rightly argues that Whitepipe has failed to exhaust several of his claims.

[¶ 43] The Court must decide how to deal with the claims Whitepipe has not presented in state court. Whitepipe wants his federal proceedings held in abeyance to allow state, and later federal, consideration of his claims. The State asserts that state procedural law forecloses both state and federal review of these claims. The Court finds and concludes that Whitepipe has not shown that federal or state review is available for his unexhausted claims.

[¶ 44] Citing *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), Whitepipe contends that he should be allowed to return to state court to pursue his unexhausted claims. Under *Lundy,* a mixed petition—that is, one that raises both exhausted and unexhausted claims—is subject to a "total exhaustion" rule that requires the dismissal of any petition containing unexhausted claims. 455 U.S. at 522, 102 S.Ct. 1198. *Lundy,* however, contemplated that the habeas petitioner could return to federal court after the requisite exhaustion. *Slack v. McDaniel,* 529 U.S. 473, 486, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Aside from reaffirming *Lundy's* total exhaustion requirement, *see* § 2254(b), the AEDPA imposes a strict one-year limitations period, *see* 28 U.S.C. § 2244(d)(1), that does not toll the pendency of federal proceedings, *see Duncan v. Walker,* 533 U.S. 167, 173–74, 181–82, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). "As a result of the interplay between AEDPA's 1–year statute of limitation and *Lundy's* dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claim." *Rhines,* 544 U.S. at 275, 125 S.Ct. 1528. Thus, a federal petitioner, who files a timely petition containing unexhausted claims, risks *Lundy* dismissal after the limitation period runs, thereby potentially closing the door to all federal review.

[¶ 45] Perhaps recognizing this procedural dilemma, Whitepipe does not ask for the dismissal of his federal petition without prejudice. Instead he seeks a stay-and-abeyance safety valve so that he can obtain consideration of his unexhausted claims.[13]

---

**13.** When Whitepipe filed his federal petition, he still had more than five months left before the expiration of the one-year statute of limitations period. That period, however, has since run. *See Duncan,* 533 U.S. at 181–82, 121 S.Ct. 2120 (holding that the limitations period is not tolled while a federal habeas petition is pending); *see also Lawrence v. Florida,* —— U.S. ——, 127 S.Ct. 1079, 1081–

[¶ 46] In *Rhines*, the Supreme Court authorized a limited stay-and-abeyance practice in federal court to allow for the development of meritorious claims while at the same time preserving the AEDPA's concern for finality and expediency. *Id.* at 278, 125 S.Ct. 1528. *Rhines* by no means requires federal courts to stay every petition that contains unexhausted claims. Rather, *Rhines* gives district courts discretionary stay-and-abeyance authority when a petitioner demonstrates that (1) there was good cause for failing to exhaust his claims in state court; (2) his unexhausted claims are not "plainly meritless"; and (3) he has not intentionally engaged in dilatory tactics. *Id.* at 277, 125 S.Ct. 1528.

[¶ 47] Whitepipe received one full round of state review. He made no effort there, either by primary review or in a successive habeas proceeding, to advance the many claims he raises for the first time now in federal court. For several reasons, the Court believes that a stay and abeyance is not appropriate here.

[¶ 48] First, *Rhines* prohibits the stay and abeyance of federal proceedings when "a petitioner engages in abusive litigation tactics or intentional delay[.]" *Id.* at 278, 125 S.Ct. 1528. A petitioner should request a stay early on in the federal case, preferably by filing a "protective" petition with the federal court and then expeditiously moving for a stay thereafter. *Pace v. DiGuglielmo*, 544 U.S. 408, 416, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). Whitepipe filed his federal petition on August 24, 2006. He waited about four months to file his motion for a stay and abeyance. By the time the motion was filed, the parties had extensively briefed the legal and factual issues of the case and the Court had issued a 36–page report and recommendation that addressed these issues. Further delay of the case "frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" and "also undermines AEDPA's goal of streamlining federal habeas proceedings[.]" *Rhines*, 544 U.S. at 277, 125 S.Ct. 1528. As an equitable remedy designed to soften the harsh strictures of the AEDPA, stay and abeyance should only be available when a petitioner shows diligence and alacrity in making such an extraordinary request. Whitepipe's sluggish and after-the-fact request to return to state court militates against granting him a stay and abeyance.

[¶ 49] Second, Whitepipe does not show good cause for failing to raise his unexhausted claims in state court. His claims are based on well-settled legal principles and factual predicates that were readily discoverable. Nothing about or inherent in the structure of South Dakota's post-conviction review process thwarted Whitepipe's efforts to bring these claims before the state courts. He could have raised the claims in his state proceedings. He could have also filed a skeletal federal petition and then promptly sought protection under *Rhines*. *See Pace*, 544 U.S. at 416, 125 S.Ct. 1807. Instead, he blames

85, 166 L.Ed.2d 924 (2007) (holding that the limitations period is likewise not tolled during the pendency of a certiorari petition to the Supreme Court). As a result, if Whitepipe's mixed petition is dismissed at this point, it would likely mean that he would be unable to refile in federal court after exhausting his unexhausted—claims the same situation the petitioner in *Rhines* faced. *See* 544 U.S. at 272–75, 125 S.Ct. 1528; *see also Lawrence*, 127 S.Ct. at 1085–86 (declining to equitably toll the limitations period to a state habeas petitioner's untimely claims). *Compare de la Garza v. Symmes*, No. 06–2562 (RHK/JJG), 2006 WL 2095481 at **3–4 (D.Minn. July 27, 2006) ("the concern underlying the *Rhines* state-and-abeyance rule—i.e., the expiration of the federal habeas statute of limitations while a habeas petition is pending in federal court—is not present in this case").

his state habeas counsel for not advancing the claims earlier.

[¶ 50] The Supreme Court has not yet determined whether ineffective assistance of habeas counsel provides "good cause" in the stay-and-abeyance context. In other procedural areas, such as a the cause-and-prejudice gateway for overcoming a procedural bar, the Supreme Court and the Eighth Circuit have not looked favorably on blaming prior habeas counsel for not exhausting claims.[14] *Coleman,* 501 U.S. at 752–54, 111 S.Ct. 2546; *Interiano,* 471 F.3d at 856–57; *Armstrong,* 418 F.3d at 927. Even if ineffective assistance of habeas counsel constitutes "good cause" under *Rhines,* Whitepipe has not shown that counsel's representation was deficient. At best, the record indicates that counsel did not raise certain claims—a situation that arises any time a petitioner includes unexhausted claims in his federal petition. Whitepipe has not demonstrated that counsel's failure to raise the unexhausted issues was because of inaptitude, neglect or strategic decision making. Nor has he submitted any evidence, despite being given the opportunity to do so, from which the Court could find that the requisite "good cause" exists to excuse his failure to exhaust his claims in state court.

[¶ 51] Third, the exhaustion requirement, including the stay-and-abeyance safety valve to it, is predicated on the availability of state court remedies. § 2254(b)(1). South Dakota strictly enforces its procedural bar rule (codified at SDCL 21–27–16.1) and generally prohibits the filing of successive habeas applications.[15] Although § 21–27–16.1 allows for

---

**14.** Federal courts have yet to reach a consensus on what constitutes "good cause", within the meaning of *Rhines,* for failing to exhaust state court remedies. Some courts have adopted the standard for "cause" applicable to procedural defaults which requires that some "objective factor external to the defense" made it impossible to bring the claim earlier in the state court proceedings as required by *Coleman,* 501 U.S. at 755, 111 S.Ct. 2546. *See e.g., Carter v. Friel,* 415 F.Supp.2d 1314, 1318 (D.Utah 2006); *Fernandez v. Artuz,* No. 00 Civ. 7601 KMW AJP, 2006 WL 121943 at *5 (S.D.N.Y. Jan. 18, 2006); *Pierce v. Hurley,* No. 2:05–CV–392, 2006 WL 143717 at *8 (S.D.Ohio Jan. 18, 2006); *Hernandez v. Sullivan,* 397 F.Supp.2d 1205, 1206 (C.D.Cal. 2005). Others, such as *Jackson v. Roe,* 425 F.3d 654, 662 (9th Cir.2005) and the remanded *Rhines v. Weber,* 408 F.Supp.2d 844, 848–49 (D.S.D.2005) (*Rhines II*), have concluded that the "cause" standard of *Rhines* requires a lesser showing than that necessary to excuse a procedural default. Yet another court has determined that the "good cause" standard falls somewhere between the "lower threshold of unfairness" and the "higher standard of extraordinary circumstances, necessary for equitable tolling in capital cases." *See Baker v. Horn,* 383 F.Supp.2d 720, 747 (E.D.Pa.2005).

There is also a split of authority among federal courts on whether ineffective assistance of post-conviction counsel qualifies as "good cause" to permit a stay of the federal proceedings. Several district courts have found that ineffective assistance of post-conviction counsel did constitute "good cause" for failure to exhaust claims in state court, *see e.g. Rhines II,* 408 F.Supp.2d at 848–49; *Ramchair v. Conway,* No. 04 CV 4241(JG), 2005 WL 2786975 at *16 (E.D.N.Y. Oct. 26, 2005); *Boyd v. Jones,* No. Civ. 05–73792–DT, 2005 WL 2656639 at *4 (E.D.Mich. Oct. 14, 2005); *Fradiue v. Pliler,* No. CIV S–00–2209WBSJFM, 2005 WL 2204862 at *2 (E.D.Cal. Sept. 8, 2005), while others have found that alleged ineffective assistance of counsel during post-conviction proceedings did not amount to "good cause", *see e.g. Carter,* 415 F.Supp.2d at 1318–19; *Vasquez v. Parrott,* 397 F.Supp.2d 452, 464 (S.D.N.Y. 2005); *Hubbert v. Renico,* No. 04–CV–71018–DT, 2005 WL 2173612 at *3 (E.D.Mich. Sept. 7, 2005).

The division among courts on these issues needs to be resolved by at least the Eighth Circuit if not the Supreme Court. It does not, however, affect this Court's recommendation as to the stay and abeyance issue or the outcome of Whitepipe's federal case.

**15.** While it is true, as Whitepipe points out, that in *Jackson v. Weber,* 2001 SD 136, 637 N.W.2d 19, the South Dakota Supreme Court

the filing of a successive application in limited circumstances, Whitepipe does not allege that he meets any of the requirements for doing so. The claims he now raises could have easily been presented in his state habeas applications. And, he does not provide a viable argument that he is actually innocent of the rape offense he pled guilty to.[16] *See Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir.2007). Because South Dakota would apply its procedural law to prohibit the filing of a successive state application, staying and holding in abeyance Whitepipe's federal petition would serve only to insert needless delay into these proceedings.

[¶ 52] Finally, Whitepipe has not made a compelling showing that, if presented to the state courts, his unexhausted claims would entitle him to habeas relief. Or, stated another way, that he would prevail in state court on any of these claims.

[¶ 53] Because Whitepipe does not meet the *Rhines* factors and/or because he has not shown that a state habeas avenue of relief remains open to him, his stay and abeyance motion/request should be denied.

## XII.

[¶ 54] Based on the findings of fact and legal discussion set forth herein and in the initial Report and Recommendation, as amended, Docket Nos. 15, 22, and pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing § 2254 Cases in the United States District Courts ("§ 2254 Rules"), it is hereby

[¶ 55] RECOMMENDED that Whitepipe's Objections, Docket No. 32, be overruled. It is further

[¶ 56] RECOMMENDED that Whitepipe's Motion for a stay and abeyance of his § 2254 petition, Docket No. 24, be denied. It is further

[¶ 57] RECOMMENDED that Whitepipe's Petition for a writ of habeas corpus, Docket No. 1, be dismissed in its entirety and with prejudice.

recognized that ineffective assistance of habeas counsel may overcome the procedural bar of SDCL 21–27–16.1, nonetheless, *Jackson* is of no help to him. Indeed, the Supreme Court in *Jackson* made clear that any alleged ineffectiveness of habeas counsel must be directed to errors in the criminal trial or plea of guilty, that is, they must go to the invalidity of the original conviction to escape § 21–27–16.1's procedural bar. 2001 SD 136, ¶ 17, 637 N.W.2d at 23; *see also Smith v. Weber*, 2005 SD 85, ¶ 22, 701 N.W.2d 416, 421; *Crutchfield v. Weber*, 2005 SD 62, ¶ 21, 697 N.W.2d 756, 761; *Jackson*, 2001 SD 136, ¶ 26, 637 N.W.2d at 24 (Konenkamp, concurring specially). Whitepipe has not made such a showing, nor can he with any of the claims he has raised. Even assuming, *arguendo*, that habeas counsel rendered ineffective assistance with respect to some or all of the defaulted claims, Whitepipe still has not shown, nor is he able to show, that the errors he complains of worked to his actual and substantial disadvantage, infecting his trial and plea-hearing with error of constitutional magnitude. *Jackson*, 2001 SD 136 at ¶ 11, 637 N.W.2d at 22; *see also Smith*, 2005 SD 85 at ¶ 23, 701 N.W.2d at 421; *Crutchfield*, 2005 SD 62 at ¶ 22, 697 N.W.2d at 761; *Goodroad v. Weber*, 2003 SD 132, ¶¶ 4–6, 671 N.W.2d 838, 839–40; *Gregory v. Solem*, 449 N.W.2d 827, 831 (S.D.1989)

16. Actual innocence, while not an actionable constitutional claim itself, *see Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), may nevertheless act as a gateway for consideration of an otherwise barred constitutional claim, *see Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To make a "credible" actual innocence claim, a petitioner must support his allegations of constitutional error with new reliable evidence—whether it be exculpatory, scientific evidence, trustworthy eye witness accounts, or critical physical evidence—that was not previously presented. 513 U.S. at 324, 115 S.Ct. 851. Whitepipe has not presented any such evidence or made any credible showing that he is actually innocent of the crime he was convicted of.

Dated this 21st day of May, 2007, at Pierre, South Dakota.

REPORT AND RECOMMENDATION FOR DISPOSITION OF PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY.

The above-captioned 28 U.S.C. § 2254 case was referred to this Court by the District Court[1] pursuant to 28 U.S.C. § 636(b)(1)(B) for purposes of appointing counsel, if appropriate, conducting necessary hearings, including an evidentiary hearing, and submitting to the latter court proposed findings of fact and a recommendation for disposition of the case.

After careful review of the records on file, including the state court filings and transcripts in Gregory County Cr. Nos. 01–39 and 02–21 and Civ. No. 04–43 and South Dakota Supreme Court Appeal Nos. 22824 and 24152, and based on the totality of the circumstances present, the Court does now make the following findings of fact and report and recommendation for disposition in accordance with the District Court's referral order.

## I.

While on probation for a forgery offense, Petitioner, Bryan W. Whitepipe ("Whitepipe"), was charged with rape, kidnapping and aggravated assault. On the third day of trial, Whitepipe agreed to plead guilty to second degree rape (SDCL 22–22–1(4) (2000)) pursuant to a plea agreement. Whitepipe's plea was subsequently accepted and he was sentenced to a prison term of 20 years, with credit for the 370 days he already spent in custody.

In his direct appeal to the state supreme court, Whitepipe raised two issues, to-wit: whether the trial court erred in denying his motion to suppress statements he made to the Gregory County Sheriff and wheth-

er he was entitled to be resentenced because that court allowed an Abel (sexual offender) Assessment to be included in his presentence investigation report. The supreme court summarily affirmed Whitepipe's conviction, concluding that it was manifest on the face of the briefs and the record that his appeal was without merit because the issues on appeal:

1. Were clearly controlled by settled South Dakota law or federal law binding upon the State; and

2. Were ones of judicial discretion and there clearly was not an abuse of discretion.

See State v. White Pipe, 683 N.W.2d 423 (S.D.2004) (table).

Subsequently, Whitepipe sought habeas relief in state court. In his state petition, Whitepipe alleged that his rights under the due process and "right to counsel" provisions of the federal and state Constitutions were violated. Specifically, Whitepipe claimed that:

1. The jury panel was improperly selected due to the trial court's failure to follow the requirements of state law;

2. He was coerced into pleading guilty after being informed by trial counsel that the trial court had directed Damon Wolf, the Gregory County Sheriff and a witness in the case, to call additional prospective jurors when a shortage in the venire panel was discovered;

3. He was likewise forced to plead guilty because none of the jurors called or seated were Native Americans, and as such, the jury that was selected did not represent a fair cross section of the people of Gregory County;

1. The Honorable Charles B. Kornmann, United States District Judge, presiding.

4. The trial court erred in refusing to allow him to withdraw his guilty plea before sentencing;

5. The prosecutor committed a *Brady* violation by withholding medical reports and testimony of Dr. Sophie Two Hawks, a physician and prosecution witness, who had examined the victim, Margaret Hacker; and

6. Trial counsel was ineffective because counsel failed to make proper objections in connection with the jury selection process and provided Whitepipe with inadequate advice that resulted in a guilty plea that was not an intelligent and voluntary choice.

At the end of the evidentiary hearing, the state habeas court determined, and habeas counsel agreed, that the crux of Whitepipe's grounds for habeas relief was whether the trial court's method of supplementing the jury panel amounted to structural error and whether trial counsel's failure to object to the same constituted ineffective assistance of counsel. The habeas court denied relief on these grounds and then later denied Whitepipe's certificate of probable cause.

Thereafter, Whitepipe sought a certification from the state supreme court that an appealable issue existed. In doing so, he raised only claims pertaining to the jury selection matter and the effectiveness of his counsel's assistance with respect to it. The supreme court denied Whitepipe's certification request.

Whitepipe then filed a timely *pro se* petition, under § 2254, for a writ of habeas corpus, raising issues that were either abandoned or waived in state court. The District Court ordered Respondent, Douglas Weber, Warden of the South Dakota State Penitentiary ("State"), to file an answer or responsive pleading. After the State filed its Answer and copies of the state criminal, habeas and appellate files, the District Court referred the case to this Court. Whitepipe then, without leave of court,[2] filed a Reply to the State's Answer, expounding on his prior claims and alleging that his trial, appellate and habeas counsel were ineffective.

## II.

During the course of a prolonged drinking bout that began on March 8, 2003 and lasted several days, Whitepipe not only raped, bit and beat Hacker, his girlfriend, but also refused to take her home. In essence, Whitepipe became enraged when a friend accused Hacker of consorting with a trucker when the van Whitepipe had allowed her to borrow ran out of gas the night before.

When Hacker returned to the residence where she and Whitepipe had been staying with friends, Whitepipe began to physically abuse her. At first, he pushed her around and pulled her by the hair, but once they went upstairs, he began hitting her. He also bit her on the chin, nose, cheeks, arms and a leg. In addition, Whitepipe struck her on the back of the head with a closed fist. Hacker tried to fight Whitepipe off, but he was able to subdue her. Later, he grabbed Hacker's neck and choked her, rendering her unconscious. When she regained consciousness, Hacker discovered that Whitepipe had stuck a beer bottle inside her vagina, causing her great pain. After removing the beer bottle, Hacker fled to the bathroom, where she washed off blood from her face from a cut to her nose.

Afterwards, Whitepipe made threatening gestures towards Hacker whenever the trucker incident came up in conversation. He also made Hacker change her clothes

---

**2.** Rule 5(e) of the § 2254 Rules contemplates that permission be granted and a time period be set by the reviewing court before a peti-

tioner may file a reply to the respondent's answer.

and took those that she had been wearing. At one point after the initial assault, a friend intervened and knocked Whitepipe down when he tried to strike Hacker again. On another occasion, Whitepipe threatened to make the left side of Hacker's face look like the injured right side if she said anything to anyone. For days, Whitepipe would not leave Hacker alone, and when she asked to be taken home, he refused to do so, telling her that she had to stay until she healed up. In addition, Whitepipe would not take Hacker home because he did not want her family to see the bruises on her face and was concerned about getting into trouble.

When Whitepipe finally did take Hacker home, an aunt, who was a community health representative, saw Hacker and how badly she was injured (her chin was green and swollen at the time) and called an ambulance. Hacker was hospitalized for two days and, seven and-a-half months later, still had scarring on her face and difficulty seeing to her right side.

On March 13, 2002, Whitepipe was interviewed by Sheriff Wolf. While denying any wrongdoing, Whitepipe confirmed much of Hacker's account of what happened. During the interview, Whitepipe said that the story about how Hacker had "supposedly been fooling around with a truck driver" (which she denied) still, days later, made him "really mad [ ]." He admitted to slapping Hacker four or five times and maintained that the sex he and she had was consensual. Whitepipe initially denied that he choked Hacker, but then acknowledged that he had done so, but not hard enough to make her pass out, as he had done before when they had sex. He conceded though that he may have gotten carried away with her. As for the biting, Whitepipe first denied doing it, and then claimed that the marks on Hacker were just hickeys, which he would often inflict on her when they had sex together. Simi-

larly, Whitepipe initially denied putting a beer bottle in Hacker's vagina, but later admitted to doing so, contending that Hacker told him to go ahead and do it. Whitepipe acknowledged that he did not want to take Hacker back to her home until her injuries looked better and that he admonished her not to say anything because he would go to jail if she did.

After being arrested, Whitepipe called Hacker from the jail and asked her not to appear in court against him. In return, he promised to buy her groceries.

### III.

Although Whitepipe has not filed a motion seeking to have counsel appointed under the Criminal Justice Act, 18 U.S.C. § 3006A, in light of the District Court's referral order, this Court must nonetheless decide whether he is entitled to the appointment of counsel in this instance.

At the outset, it must be observed that "there is neither a constitutional nor statutory right to counsel in habeas proceedings; instead, it is committed to the discretion of the trial court." *Morris v. Dormire*, 217 F.3d 556, 558 (8th Cir.) (quoting *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir.1997)), *cert. denied*, 531 U.S. 984, 121 S.Ct. 439, 148 L.Ed.2d 445 (2000); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555–57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). A habeas corpus proceeding is civil in nature and "the Sixth Amendment's right to counsel afforded for criminal proceedings does not apply." *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir.1994) (quoting *Boyd v. Groose*, 4 F.3d 669, 671 (8th Cir.1993)).

A court, however, may appoint counsel for a *pro se* petitioner seeking federal habeas relief when "the interests of justice so require." *Hoggard*, 29 F.3d at 471; *see also* § 3006A(a)(2)(B). If the

court conducts an evidentiary hearing, the interests of justice require the appointment of counsel. Rule 8(c) of the § 2254 Rules ("if an evidentiary hearing is warranted, the judge *must* appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A." (emphasis added)); *see also Roney v. United States,* 205 F.3d 1061, 1063 (8th Cir.2000); *Johnson v. Weber,* Civ. No. 05–4062, 2006 WL 704842 at *10 (D.S.D. Mar. 20, 2006). If no evidentiary hearing is necessary, the appointment of counsel is discretionary. *Hoggard,* 29 F.3d at 471; *Johnson,* 2006 WL 704842 at *10.

■ In exercising its discretion, a court should first determine whether the habeas petitioner has presented a non-frivolous claim. *Abdullah v. Norris,* 18 F.3d 571, 573 (8th Cir.), *cert. denied,* 513 U.S. 857, 115 S.Ct. 163, 130 L.Ed.2d 101 (1994). If the petitioner has presented only claims that are frivolous or clearly without merit, the court should dismiss the case on the merits without appointing counsel. Rule 4 of the § 2254 Rules; *Abdullah,* 18 F.3d at 573. If the petitioner has presented a non-frivolous claim, the court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the petitioner and the court to such an extent that "the interests of justice so require it." § 3006A(a)(2)(B); *Nachtigall v. Class,* 48 F.3d 1076, 1081 (8th Cir.1995); *Abdullah,* 18 F.3d at 573. In determining whether the appointment of counsel is necessary for a petitioner seeking habeas relief with non-frivolous claims, the court should consider the legal and factual complexity of the case, the petitioner's ability to investigate and present claims and any other

relevant factors. *McCall,* 114 F.3d at 756; *Hoggard,* 29 F.3d at 471.

Applying these factors to the case at hand, the Court concludes that the interests of justice do not require the appointment of counsel. The claims Whitepipe raises in his Petition and Reply, while not frivolous or plainly devoid of any colorable merit on their face, are, nevertheless, not ones that involve complex legal or factual issues or ones that require further fact investigation. *McCall,* 114 F.3d at 756; *Hoggard,* 29 F.3d at 471–72. It is evident that Whitepipe understands the issues involved and is capable of articulating them. *Id.* His Petition and Reply are well written and contain proper citations to applicable legal authorities so as to enable the Court to determine whether federal habeas relief is warranted. *Nachtigall,* 48 F.3d at 1082. Finally, Whitepipe's claims can easily be resolved on the basis of the state court record. *Hoggard,* 29 F.3d at 472; *Johnson,* 2006 WL 704842 at *10. For these reasons, the Court finds it unnecessary to appoint counsel for Whitepipe and declines to do so.

## IV.

The District Court, in its referral order, directed that this Court determine whether an evidentiary hearing was required on Whitepipe's Petition ("the above-entitled action is hereby referred . . . for the purpose [ ] of . . . conducting any necessary hearings, including evidentiary hearings. . . ."). Whitepipe has requested an evidentiary hearing [3] and the Court is duty bound, under Rule 8 of the § 2254 Rules, to decide if an evidentiary hearing is mandated or otherwise called for here.

Section 2254, as amended by the 1996 Anti–Terrorism and Effective Death Penalty Act (AEDPA), places significant limits

---

**3.** On page 6 of his Reply, Whitepipe asserts that he is "entitled to a hearing on his petition for habeas corpus."

on the ability of a federal habeas petitioner to challenge a state court decision on the merits and in the use of evidentiary hearings to develop a record in federal court that was never completed and put before the state courts. The section of the AEDPA that controls evidentiary hearings is 28 U.S.C. § 2254(e)(2). This section states as follows:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

A federal court thus must initially consider whether there is a factual basis for a claim that was developed in state court, a question normally susceptible to a simple yes or no answer. *Williams v. Taylor*, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). If the answer is "yes" and the petitioner has developed the requisite factual basis for his claim in state court, the AEDPA requires the federal court to defer to the state court's findings of fact. 28 U.S.C. § 2254(e)(1). Significantly, an implicit state court factual determination is tantamount to an express one such that deference is due to either determination. *Parke v. Raley*, 506 U.S. 20, 35, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *Marshall v.*

*Lonberger*, 459 U.S. 422, 432–33, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

If, on the other hand, the answer is "no" and it is the petitioner who has "failed" to develop a factual basis for his claim in the course of the state court proceedings and is thus at "fault" for that deficiency, the AEDPA requires him to "satisfy a heightened standard to obtain an evidentiary hearing." *Williams*, 529 U.S. at 433, 120 S.Ct. 1479. Section 2254(e)(2)(A) affords the petitioner the "opportunity to obtain an evidentiary hearing where the legal or factual basis of [his] claims did not exist at the time of the state court proceedings." *Williams*, 529 U.S. at 436, 120 S.Ct. 1479. While the petitioner must be diligent in his attempt to develop the state court record, subsection (e)(2)(A)(ii) does not preclude the granting of an evidentiary hearing where "the facts could not have been discovered, whether there was diligence or not." *Williams*, 529 U.S. at 435, 120 S.Ct. 1479. In this way, subsection (e)(2)(A)(ii) "bears a close resemblance to [subsection] (e)(2)(A)(i), which applies to a new rule [of constitutional law] that was not available at the time of the earlier proceedings." *Williams*, 529 U.S. at 435, 120 S.Ct. 1479. If the petitioner is able to establish that at least one of his claims relies on a new rule of law or a previously unavailable factual scenario, he must then show that he has a "convincing claim of innocence" under subsection (e)(2)(B) to obtain an evidentiary hearing. *Williams*, 529 U.S. at 435, 120 S.Ct. 1479.

Here, the factual basis for some of Whitepipe's claims was sufficiently developed in state court. An evidentiary hearing to further address these claims, is unnecessary and all that is left to be done is for the Court to decide whether the state court was correct in its factual determinations. *See* § 2254(e)(1).

Similarly, Whitepipe may not now obtain an evidentiary hearing on the claims he

failed to develop in state court because he cannot meet the "heightened standard" set forth in § 2254(e)(2). Whitepipe does not assert that any of his undeveloped claims rely on a new, retroactive law. Nor has he shown that the relevant facts underlying any of these claims could not have been readily discovered and/or presented during the state habeas proceedings.

Inasmuch as Whitepipe is unable to satisfy the rigid requirements of § 2254(e)(2)(A), the Court need not reach the question of whether he can establish a "convincing claim of innocence" under subsection (e)(2)(B), *Williams*, 529 U.S. at 435, 120 S.Ct. 1479. This being the case, Whitepipe is not eligible for, much less entitled to, an evidentiary hearing and one will not be held.[4] *Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir.), *cert. denied*, 546 U.S. 844, 126 S.Ct. 93, 163 L.Ed.2d 109 (2005).

## V.

Review of Whitepipe's claims is governed by the AEDPA. "In the interests of finality and federalism, federal courts are constrained by [the] AEDPA to exercise only a 'limited and deferential review of underlying state court decisions.'" *Evenstad v. Carlson*, 470 F.3d 777, 781–82 (8th Cir.2006) (*quoting Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir.2003), *cert. denied*, 540 U.S. 1059, 124 S.Ct. 833, 157 L.Ed.2d 716 (2003)). Federal habeas relief will not be granted on any claim "adjudicated on the merits in State court proceedings unless the adjudication of the claim * * * resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as deter-

mined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A federal court's first step, then, in evaluating a challenge to a state court's application of the law is to determine what, if anything, the Supreme Court has said on the subject. From there, the court must proceed to carefully review the decision of the state court. Under the AEDPA, that decision will be viewed as "contrary to" clearly established federal law if the state court either "applies a rule that contradicts the governing law set forth [by the Supreme Court]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court" and nevertheless arrives at a different result. *Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). As for the "unreasonable application of" inquiry, the federal court should ask whether the state court correctly identified the governing legal rule, but applied it unreasonably to the facts of a particular prisoner's case. *Id.* Thus, even if the federal court "concludes" that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if the application is also objectively unreasonable. *Id.* at 793, 121 S.Ct. 1910.

The factual findings of the state court may also be challenged in a § 2254 proceeding, but they are subject to an even more deferential review. Relief may be granted if an adjudication by a state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Factual findings by the state court, however, "shall be presumed to be correct," a

---

4. Even if a habeas petitioner is able to meet the requirements of § 2254(e), a court, in its discretion, may still refuse to hold an evidentiary hearing if such a hearing would not be meaningful and have the potential to advance one or more of the petitioner's claims. *Campbell v. Vaughn*, 209 F.3d 280, 287 (3rd Cir.

2000), *cert. denied*, 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001). For the reasons more fully explained below, the Court believes that an evidentiary hearing would not be a warranted use of its discretion under the AEDPA because Whitepipe is not entitled to habeas relief under settled law.

presumption that can only be rebutted by "clear and convincing evidence." § 2254(e)(1).

With these standards in mind, this Court turns now to Whitepipe's various claims for relief.

## VI.

Whitepipe's first claim, that his statements to Sheriff Wolf should have been suppressed because he was never advised of his rights and did not confess, was waived when his guilty plea was accepted by the trial court, *see United States v. Smith*, 422 F.3d 715, 724 (8th Cir.2005), *cert. denied*, 546 U.S. 1127, 126 S.Ct. 1112, 163 L.Ed.2d 921 (2006); *State v. Hoeft*, 1999 SD 24 ¶ 12, 594 N.W.2d 323, 326, and is a defaulted claim that is unreviewable, *see Armstrong v. Iowa*, 418 F.3d 924, 925–26 (8th Cir.2005), *cert. denied*, 546 U.S. 1179, 126 S.Ct. 1351, 164 L.Ed.2d 63 (2006).

A petitioner may not obtain federal habeas relief unless he "has exhausted the remedies available in the courts of [his] State." 28 U.S.C. § 2254(b)(1)(A). To exhaust a claim, the petitioner must fairly present his federal claim to the appropriate state courts in the manner required by state law, thereby "afford[ing] the state courts meaningful opportunity to consider [the] allegations of legal error." *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *see also Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) ("Before seeking a fed-

eral writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.' ").

Where a state court remedy is available for a petitioner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the "stay and abeyance" procedure described in *Rhines v. Weber*, 544 U.S. 269, 277–79, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). If, however, no state remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the claim is considered procedurally defaulted and cannot serve as grounds for federal habeas corpus relief unless the petitioner can demonstrate "cause and prejudice." *Armstrong*, 418 F.3d at 926; *see also Gray v. Netherland*, 518 U.S. 152, 161–62, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). If the claim is procedurally defaulted, the petitioner must establish either "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "that failure to consider the claim will result in a fundamental miscarriage of justice." [5] *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

The record indicates that at no time after being sentenced did Whitepipe alert any state court to the federal nature of his suppression claim.[6] The claim is therefore

---

**5.** The "miscarriage of justice" exception extends primarily to cases in which the constitutional violation "has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *accord Schlup v. Delo*, 513 U.S. 298, 324–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (holding that the *Carrier* "probably resulted" standard governs the miscarriage of justice inquiry when a petitioner who has been sentenced to

death raises a claim of actual innocence to avoid a procedural bar to the consideration of the merits of his constitutional claim). "Actual innocence" is not an issue in Whitepipe's case.

**6.** "Ordinarily, a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find

unexhausted, but because further pursuit of it in state court would be futile, *see Hoeft,* 1999 SD 24, ¶ 12, 594 N.W.2d at 326; *State v. Cowley,* 408 N.W.2d 758, 759 (S.D.1987); SDCL 21–27–16.1 (1983), § 2254(b)'s exhaustion requirement has been met. As such, Whitepipe's failure to exhaust provides an adequate and independent state law ground for his rape conviction and precludes federal review of his claim unless he can demonstrate cause and prejudice for his default. Inasmuch as neither has been shown nor alleged, his claim must be dismissed.

But, even assuming, *arguendo,* that Whitepipe's suppression claim is reviewable, the same is without merit. The trial court's factual findings are not clearly erroneous, especially without a transcript of the suppression hearing to judge them against. The findings reveal that:

1. Whitepipe was advised of his rights, waived them and agreed to talk to Sheriff Wolf;

2. His interview with the Sheriff lasted no more than 30 to 45 minutes;

3. There was no evidence of sleep or food deprivation, promises, coercion, threats, false representations or trickery;

4. Prior to the interview, he knew he was going to jail pursuant to a "pick up and hold" that had been lodged against him by his probation officer;

5. He at no time during the interview ever invoked any of his rights;

6. He was 42 years old at the time, had more than two years of college education and was not of low intelligence; and

7. He had a prior criminal history and had experience with law enforcement, including the Sheriff himself.

Based on these findings, the court concluded that Whitepipe's statements were knowingly, voluntary, and intelligent and that they were made after a valid waiver of his rights. The court considered the State's burden of proof (which at the time was beyond a reasonable doubt) and the voluntariness of Whitepipe's statements in light of the totality of the circumstances,

---

material, such as a lower court opinion in the case, that does so." *Baldwin,* 541 U.S. at 32, 124 S.Ct. 1347; *see also id.* at 31, 124 S.Ct. 1347 ("to say that a petitioner 'fairly presents' a federal claim when an appellate judge can discover that claim only by reading lower court opinions in the case is to say those judges *must* read the lower court opinions—for otherwise they would forfeit the State's opportunity to decide that federal claim in the first instance. In our view, federal habeas corpus law does not impose such a requirement."). Providing guidance to habeas petitioners on this subject, the Supreme Court observed that:

A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim, the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Id.* at 32, 124 S.Ct. 1347.

Although Whitepipe appealed the trial court's denial of his suppression motion to the state supreme court, he did not raise, or otherwise assert, a federal law violation or apprise that court of the federal basis for his suppression claim. His appellate brief did not (unlike his Abel Assessment claim), "explicitly ... refer to a federal claim" or "refer [ ] to provisions of the Federal Constitution", "provide[d] no citation of any case that might have alerted the [supreme] court to the alleged federal nature of the claim," and "did not even contain a factual description supporting the claim." *Id.* at 33, 124 S.Ct. 1347. Under these circumstances, and consistent with *Baldwin,* it cannot be said that Whitepipe complied with the "fair presentation" requirement of the exhaustion rule. *Baldwin,* 541 U.S, at 30–33, 124 S.Ct. 1347; *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

including his background and experience, and concluded that his will had not been overborne and that his ability to make an unrestrained, autonomous decision had not been critically impaired.

The state court's factual determinations are presumed to be correct, *see* § 2254(e)(1), and they are not unreasonable in view of the evidence presented in the state court proceedings, *see* § 2254(d)(2). Nor did the factual determinations result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. *See* § 2254(d)(1). Accordingly, federal habeas relief cannot be granted to Whitepipe on his suppression claim. *See* § 2254(d).

## VII.

■■■ Whitepipe's second claim, that the prosecutor violated his right to due process by filing a habitual offender enhancement, was never presented to any of the state courts. The claim was never raised in Whitepipe's direct appeal to the state supreme court or in either his state habeas petition or amended petition. Because Whitepipe's claim is procedurally barred under state law, *see* SDCL 21–27–16.1, and that bar provides an independent and adequate basis for upholding Whitepipe's conviction[7] and because no cause or prejudice for his default or actual innocence has been shown, his claim is not cognizable in federal court. *Armstrong*, 418 F.3d at 925–27.

In a belated attempt to establish "cause" sufficient to excuse his procedural default, Whitepipe claims that trial counsel's failure to object to, or move for a dismissal of, the habitual offender information was constitutionally ineffective assistance. Yet the Supreme Court has made clear that a federal habeas court is barred from considering an ineffective assistance of counsel claim as "cause" for the procedural fault of another claim where, as here, the ineffective assistance claim is itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 448, 450–53 & n. 3, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Evans v. Luebbers*, 371 F.3d 438, 445–46 (8th Cir. 2004), *cert. denied*, 543 U.S. 1067, 125 S.Ct. 902, 160 L.Ed.2d 800 (2005); *Adams v. Ault*, No. C99–2110–MWB, 2001 WL 34008477 at **8–12 (N.D.Iowa Oct. 3, 2001); *see also Williams v. Kemna*, 311 F.3d 895, 897–98 (8th Cir.2002) (procedural default was not excused by alleged ineffective assistance of appellate counsel in failing to raise lack-of-presence claim on direct appeal). Whitepipe has offered no excuse for the procedural default of his ineffective assistance claim, the very claim he uses to excuse his defaulted due process claim. *Brownlee v. Haley*, 306 F.3d 1043, 1065–67 (11th Cir.2002); *Dellinger v. Bowen*, 301 F.3d 758, 766–67 (7th Cir.2002), *cert. denied*, 537 U.S. 1214, 123 S.Ct. 1312, 154 L.Ed.2d 1065 (2003). Nor has he demonstrated that there is a reasonable probability that the outcome of his case would have been different had counsel challenged the validity of the habitual offender information.[8]

7. Procedural default of a claim under state law may constitute an adequate and independent state law ground that precludes federal review, *see Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), but only if the state procedural rule is firmly established, regularly followed and readily ascertainable, *see Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Having reviewed SDCL 21–27–16.1 and case law from the state supreme court interpreting it, this Court is satisfied that

these requirements have been met. *See Goodroad v. Weber*, 2003 SD 132, ¶¶ 4, 6, 671 N.W.2d 838, 839–40; *Jackson v. Weber*, 2001 SD 136, ¶ 11, 637 N.W.2d 19, 22; *Gregory v. Class*, 1998 SD 106, ¶¶ 24–25, 584 N.W.2d 873, 880; *Application of Novaock*, 1998 SD 3, ¶¶ 16, 12, 572 N.W.2d 840, 842, 844; *Ashker v. Class*, 534 N.W.2d 66, 67–69 (S.D.1995); *Gregory v. Solem*, 449 N.W.2d 827, 829–33 (S.D.1989).

8. In *Strickler v. Greene*, 527 U.S. 263, 289–90, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the

██ Regardless, Whitepipe's due process claim is devoid of any factual or legal basis. He raped Hacker while on probation for a forgery offense for which he received a suspended imposition of sentence. Under South Dakota law, a suspended imposition of sentence is considered a prior conviction for purposes of determining whether a defendant is a habitual offender and subject to an enhanced sentence. *See* SDCL 23A–27–15 (1978); *see also State v. Winchester,* 438 N.W.2d 555, 555–56 (S.D.1989) (suspended imposition of sentence for driving under the influence offense may be used to enhance penalty for subsequent driving under the influence violation).

Aside from this, it is important to remember that Whitepipe initiated the plea negotiations that led to his guilty plea at trial and that the product of these negotiations was the dismissal of all but one of the rape charges, and resulted in him avoiding a kidnapping conviction and a potential sentence of life imprisonment without parole. Plainly, there was no deprivation of due process under these circumstances. Whitepipe's claim that there was something improper about bartering away enhanced sentences and/or dismissing other charges in exchange for a guilty plea to one, borders on the absurd. His claim is meritless.

## VIII.

██ Whitepipe's third claim is that he is entitled to federal habeas relief because the State committed a *Brady* violation by withholding medical reports and testimony of Dr. Two Hawks. Whitepipe contends that the reports and testimony were used in the State's case in chief, that his trial counsel was not given the reports or advised of what Dr. Two Hawks would testify to and that he could not form a defense to this evidence and prove that the same was exculpatory. What Whitepipe ignores, or turns a blind eye to, is the fact that he entered into a plea agreement and pled guilty to the rape charge *before* Dr. Two Hawks was scheduled to testify.

Whitepipe initially raised this claim in the state habeas proceedings, but later abandoned it. He did not present the claim on direct appeal or in his motion for a certificate of probable cause after the state habeas court ruled against him. His claim, therefore, is unexhausted. Because he is procedurally barred under South Dakota law from filing a successive petition, *see* SDCL 21–27–16.1, dismissal is warranted unless he can show cause and prejudice for his default. *Armstrong,* 418 F.3d at 925–27. His after-the-fact claim that both trial and habeas counsel were ineffective for not raising and/or pursuing his *Brady* claim, does not provide him with the requisite "cause" to excuse his defaulted *Brady* claim (especially when the ineffective assistance claim itself is also an unexcused defaulted claim). *Edwards,* 529 U.S. at 450–53 n. 3, 120 S.Ct. 1587; *ante* at 1100. Nor does it satisfy the *Strickland* prejudice standard required to overcome the procedural bar caused by his default. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). And, with respect to his ineffective assistance of habeas counsel claim, the Sixth Amendment right to counsel does not extend to state post-conviction proceedings. *Coleman,* 501 U.S. at 752, 111 S.Ct. 2546;

Supreme Court clarified that the prejudice prong of *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (1984) is co-terminous with the prejudice required to overcome a procedural default under *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)

and its progeny. *See Mincey v. Head,* 206 F.3d 1106, 1147, n. 86 (11th Cir.2000), *cert. denied,* 532 U.S. 926, 121 S.Ct. 1369, 149 L.Ed.2d 297 (2001); *Prou v. United States,* 199 F.3d 37, 49 (1st Cir.1999).

*Finley,* 481 U.S. at 555–56, 107 S.Ct. 1990; *Armstrong,* 418 F.3d at 927.

In any event, dismissal of Whitepipe's *Brady* claim is called for because there is no merit to it. Trial counsel testified that the prosecutor had informed counsel of the substance of Dr. Two Hawks' testimony. That testimony concerned cervical injuries or bruises to Hacker that were inflicted by something too hard to be natural. Counsel knew, before trial, that Dr. Two Hawks had examined Hacker, but was unable to schedule an interview. Counsel, though, was told by the prosecutor that he would have an opportunity to talk to Dr. Two Hawks privately before she testified. The record contains no indication that the medical records and contemplated testimony from Two Hawks were in any way exculpatory. The record, however, does reveal that Whitepipe admitted that he inserted a beer bottle into Hacker's vagina.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Banks v. Dretke,* 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (*quoting Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). The *Brady* rule applies to evidence which "impeaches the credibility of a government witness," *Dye v. Stender,* 208 F.3d 662, 665 (8th Cir. 2000), whether or not the accused has specifically requested the information. *Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles,* 514 U.S. at 433–34, 115 S.Ct. 1555 (*quoting United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375.

Inasmuch as Whitepipe has neither alleged nor shown that the evidence from Dr. Two Hawks was favorable to him and that it would create a reasonable probability of a different outcome, such evidence was not material under *Brady.* He therefore cannot prevail on his claim.

## IX.

 Whitepipe's fourth claim, namely, that he was coerced into pleading guilty because Sheriff Wolf was permitted to call additional venirepersons and because there were no Native American Indians on the master jury list or among those venirepersons who were later called, must likewise fail.

 Generally, once a defendant pleads guilty, he cannot raise independent claims involving constitutional deprivations, including those based on the legality of the jury selection process, that occurred prior to the entry of the guilty plea. *Tollett v. Henderson,* 411 U.S. 258, 266–67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *see also United States v. Castillo,* 464 F.3d 988, 989–90 (9th Cir.2006); *Thundershield v. Solem,* 565 F.2d 1018, 1026–27 (8th Cir. 1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1585, 55 L.Ed.2d 805 (1978). Where, as here, the defendant had counsel and the record plainly demonstrates that the juror related claims are unfounded, his guilty plea must stand.

On the first day of trial, the trial court informed Whitepipe and trial counsel that there was a shortage of prospective jurors and more needed to be called:

Bryan, I don't know how much time you've had to visit with [trial counsel], we have done a couple of things this morning that I think that we need to

place on the record. When we all got here this morning, we discovered that there are 57 prospective jurors on the list to be called. Each attorney gets 20 peremptories, we need to seat 13 jurors, because we will pick one alternate. So that is 53 people that need to come up. Well, that only leaves four people in the audience to draw from if we have challenges for cause, and so that is a problem. State law provides, and what we did, that the Sheriff can round up folks to serve as jurors. We had Charlie Wolf come in, who is the Gregory County Sheriff, he indicated that he was not comfortable drawing the names of prospective jurors since he is a witness in this case. And so his secretary is going through the phone book randomly, getting 10 prospective jurors from Bonesteel–Fairfax, 10 perspective jurors from Gregory, 10 prospective jurors from Burke. The attorneys and I met and decided that was a fair and appropriate way to keep the—to follow State law, by having the Sheriff pick the jurors, without him influencing who comes in. So, we are going to end up with this jury list, plus 30 additional jurors.

No objections were voiced to this procedure. The Sheriff's secretary then proceeded to randomly select additional prospective jurors from phone listings, without the Sheriff being involved in this process, a matter that trial counsel discussed with Whitepipe. Whitepipe only expressed concern about the Sheriff being involved in the augmentation process, and was informed that the Sheriff would not be an actual participant in the same. In fact, the Sheriff remained in the courtroom area and did not involve himself in the process at all.

One of the supplemental venirepersons summoned was actually the Sheriff's mother (she and the Sheriff had different last names), who was promptly excused without further ado. Her presence, if anything, indicates that the Sheriff was not a personal participant in the selection process.

Significantly, trial counsel testified that the method used by the trial court to augment the jury pool was similar to that which had been used in another case counsel was involved in and that he considered the method to be in accord with SDCL 16–13–31 (1972).[9] Whitepipe's testimony, that counsel had told him that all of the jurors from the master list had been dismissed, that the venire was being selected from a phone book and that no Native Americans in the county owned cell phones, is either untrue or an exaggeration. The record does not show that all of the prospective jurors from the initial panel were in fact removed. And, to say that there were no Native Americans in the county who owned phones (or had phone listings) is, if nothing else, a stretch.

Whitepipe maintained that the presence of the Sheriff's mother intimidated him to the point where "It made me feel like giving up, like a sitting duck, like they were just out to get me. And at that point I just—I knew that I didn't have a fair fight or a fair trial." The Sheriff's mother, however, was excused without objection at the conclusion of an in-chambers hearing held during voir dire and outside the presence of the other prospective jurors.

 In those instances where a sheriff participates in the investigation of a defendant's case and also selects bystander jurors based on subjective criteria, the de-

---

**9.** This statute provides, in pertinent part, that no irregularity or omission invalidates a petit jury panel unless it is made to appear, to the satisfaction of the court for which the panel was drawn, that there was misfeasance or malfeasance so as to deprive the person charged with a crime of a substantial right.

fendant's right to a fundamentally fair trial is violated. *Anderson v. Frey*, 715 F.2d 1304, 1309 (8th Cir.1983), *cert. denied*, 464 U.S. 1057, 104 S.Ct. 739, 79 L.Ed.2d 198 (1984); *Henson v. Wyrick*, 634 F.2d 1080, 1081, 1084–85 (8th Cir.1980), *cert. denied*, 450 U.S. 958, 101 S.Ct. 1417, 67 L.Ed.2d 383 (1981). Where, however, the individual who selects the bystander jurors was not involved in investigating the case and uses objective criteria in doing so, the process does not deprive the defendant of his constitutional rights. *Cody v. Solem*, 755 F.2d 1323, 1335 (8th Cir.), *cert. denied*, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *Russell v. Wyrick*, 736 F.2d 462, 464 (8th Cir.1984), *cert. denied*, 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 346 (1985); *Holt v. Wyrick*, 649 F.2d 543, 546 (8th Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982).

In the present case, this Court is unable to find that the process used to select additional venirepersons denied Whitepipe of his constitutional rights. Such persons were chosen objectively, from a phone book, and not from some list of "approved" individuals. Further, and perhaps more importantly, the Sheriff did not personally execute the trial court's order, but rather delegated this responsibility to his secretary, who was not involved in the investigation or prosecution of Whitepipe. The bystander juror process that was utilized in Whitepipe's case, therefore, did not violate any of his rights. *Coury v. Livesay*, 868 F.2d 842, 845 (6th Cir.1989).

Furthermore, and in contrast to Whitepipe's testimony, trial counsel related that he had analyzed the racial makeup of the original master jury list with that gleaned from county-published records and came up with certain percentages. With these percentages in mind, counsel looked at and factored in the apparent races of the additional prospective jurors and concluded that the venire "either met or exceeded the accepted ratio of Native Americans to non-Native American[s]." Not having produced any reliable data or statistics relating to Gregory County or to the jury selection in his own case, Whitepipe has failed to establish that he was a victim of racial under-representation and, as such, deprived of his federal constitutional rights. His claim that the telephone listing methodology prejudiced him because it unfairly excluded Native Americans is speculative at best and insufficient to establish a prima facie case of discrimination. *Singleton v. Lockhart*, 871 F.2d 1395, 1397–99 (8th Cir.), *cert. denied*, 493 U.S. 874, 110 S.Ct. 207, 107 L.Ed.2d 160 (1989) (telephoning African Americans); *State v. Aesoph*, 2002 SD 71, ¶ 43–45, 647 N.W.2d 743, 757–58 (inadequate proof that sheriff's contacting Native Americans in certain communities resulted in racial imbalance).

Significantly, trial counsel testified that Whitepipe never gave any indication to counsel, at any time, that Whitepipe had concerns with the jury selection process after being informed that the Sheriff would not be involved in the same:

Q. But my question is, was it explained to Mr. Whitepipe that it was someone other than [the Sheriff] who was making the selections?

A. Yes, yes, because then after I talked to [the Sheriff], I went back and told Bryan, and he nodded okay with the selection or going out and picking up, contacting these people.

Q. And other than this concern about [the Sheriff] possibly being involved in the process, did he give you any other objection as to the overall jury selection process?

A. No.

The state habeas court denied Whitepipe's claim. In its findings of fact, the court noted that Whitepipe did not object to the jury panel supplementation, raise any oth-

er "structural" error or complain that the supplementation was a cause or catalyst for his decision to plead guilty. The court found that Whitepipe's decision to plead guilty was based on the quality of the State's evidence and his desire to limit his exposure to a possible life sentence. Moreover, the court specifically found that Whitepipe's "newly-made claim" that an improperly-selected jury was the impetus for his decision to plead guilty [was] not credible." The court concluded that Whitepipe's guilty plea was made knowingly, intelligently and voluntarily, with the advice of counsel, and that by virtue of his plea, he waived any objections he may have had to the structure of the jury panel or to the jury selection process. The court's findings are presumptively correct and did not result in a decision that was contrary to or that involved an unreasonable application of salient federal law or a decision that was unreasonable in light of the evidence of record. Whitepipe is therefore not entitled to relief on his jury selection claim.

### X.

■ For his fifth claim, Whitepipe contends that he should have been allowed to withdraw his guilty plea because the State failed to live up to its obligations under the plea agreement. This claim, however, was never presented in Whitepipe's direct appeal to the state supreme court or in his state habeas case. Nor was it raised as part of his motion for a certificate of probable cause to the supreme court. His procedural default is an adequate and independent state-law ground for preventing federal habeas corpus review absent a showing of cause and prejudice for the default. *Armstrong,* 418 F.3d at 926–27.

Once again, Whitepipe tries to excuse his default by claiming that trial and habeas counsel were ineffective. The ineffective assistance claim he now raises, however, is itself a defaulted claim and does not provide him with the "cause" and "prejudice" needed to overcome the procedural bar that exists with respect to his original defaulted (breach of the plea agreement) claim. *Edwards,* 529 U.S. at 450–53 & n. 3, 120 S.Ct. 1587; *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *ante* at 1100–02.

Yet even if the underlying claim is justiciable, it nonetheless lacks merit and cannot succeed. Whitepipe maintains that the prosecutor breached the plea agreement by failing to recommend an indeterminate prison term of no less than five years and no more than fifteen years at sentencing. To bolster his position, Whitepipe has attached a partial transcript of page 38 of the sentencing transcript. Pages 37 and 39 of the transcript, however, make clear that the statement Whitepipe refers to on page 38 is part of his trial counsel's sentencing argument, not a promise or statement made by the prosecutor.

At the change of plea hearing, the trial court and Whitepipe engaged in this brief colloquy:

> THE COURT: It is also my understanding that the State will not recommend a number of years—the number of years in the Penitentiary. But that they will get to submit to the Court any argument or evidence as to any aggravating factors, is that your understanding?
>
> THE DEFENDANT: Yes.

The custody aspect of the plea agreement was delved into further with trial counsel in the state habeas case:

> Q. —tell us as well as you can what the offer was, including any terms that were included.
>
> A. She [the prosecutor] would drop the habitual offender, dismiss everything but one count of rape. She would not make a request for any number of years for sentence, but she reserved the opportunity to offer aggravation testimony.

Q. Did that change at all from when you brought it to Mr. Whitepipe until the deal was agreed to?

A. I think I went back to her to try to get it to change, and she would not change it.

Q. During any of these discussions, was there any mention of this indeterminate five to fifteen-year period that Mr. Whitepipe has testified to?

A. The only time that that probably was discussed again was back with the original plea agreement when we did talk about indeterminate and on that five-year sentence is when his testimony regarding maybe serve six months came out when we had that discussion.

Q. When was that?

A. That would have been during the summer.

Q. That was?

A. Not during—not at the time of trial.

It is evident from the testimony quoted above, that there was no promise, such as the one Whitepipe insists was broken, ever made during or in connection with the October 31, 2002 plea agreement.

■■■■■■ It is well established that when a guilty plea rests on a promise made by the prosecutor, so that it can be said to be part of the inducement or consideration for the plea, that promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *see also United States v. Fowler*, 445 F.3d 1035, 1037 (8th Cir.2006). *Hoek v. Weber*, 2006 SD 102, ¶¶ 12–25, 724 N.W.2d 858, 862–65. Yet where, as a matter of fact, the plea agreement does not contain the promise alleged to have been made and broken, no due process violation exists and habeas relief may be properly denied. *Trussell v. Bowersox*, 447 F.3d 588, 591 (8th Cir.), *cert. denied*, —— U.S. ——, 127 S.Ct. 583, 166 L.Ed.2d 434 (2006).

XI.

■■■■ As his sixth ground for relief, Whitepipe claims that his guilty plea was not a knowing and voluntary one because he had not been informed of the consequences of such a plea, including the requirement that he would have to register as a sex offender. Whitepipe, however, did not present this claim in his direct appeal, in either of his state habeas court petitions or in his probable cause certificate to the state supreme court. Because SDCL 21–27–16.1 suffices as an independent and adequate state procedural bar to Whitepipe's federal claim and because the "cause" he alleges to overcome his procedural default (ineffective assistance of trial and habeas counsel) is nothing more than another unexcused defaulted claim, his plea advisement claim has not been preserved and must be dismissed. *Edwards*, 529 U.S. at 450–53 & n. 3, 120 S.Ct. 1587; *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *ante* at 1100–02.

Notwithstanding this, Whitepipe's claim is factually and/or legally insufficient and provides him with no basis for relief. When canvassing Whitepipe about the terms of the plea agreement and determining that he understood them, the trial court fully advised him of his rights, including the rights he would be giving up by pleading guilty, before accepting his

THE COURT: All right. The Court would accept that plea agreement. Mr. Whitepipe, I've gone over your rights with you several times, but I'm going to go over those rights with you again today. If you have any questions about these rights, I would be happy to answer them for you, or give you additional time to talk to [trial counsel], either about these rights or about your case.

You have a right to know the charges against you and the maximum possible sentence. You have a right to plead not

guilty and to make the State prove what it says you did. The State must prove each element of the charges [sic] against you beyond a reasonable doubt. You are presumed innocent. You never have to prove you are innocent. You have a right to a speedy, public trial before a Judge or a jury picked from the voter and driver's license list in Gregory County. At a trial, each of the 12 jurors would have to agree unanimously you are guilty before you could be found guilty. You cannot be called to testify if you want to remain silent. This is your privilege against self-incrimination. On the other hand, you can testify if you want to, and you could offer evidence and call witnesses on your own behalf. If a witness would refuse to come to court, I can issue a subpoena and require that witness to appear anyway. You have a right to be present at your trial, in person and in open court, to confront and cross-examine the witnesses against you.

You have the right to an attorney, and if you cannot afford an attorney, to have one appointed at public expense. Of course, this would not be free as you would be required to repay any court appointed attorney's fees, and those fees would become a lien against any property that you own.

But, if you plead guilty to this charge, you would be found guilty just as if you had a trial, and you would give up the rights which I have just explained. If you are convicted, you have a right to appeal within 30 days after the judgment is filed to the South Dakota Supreme Court.

Mr. Whitepipe, do you understand these rights?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions?

THE DEFENDANT: No.

The trial court allowed Whitepipe time to confer with trial counsel about the charge and granted Whitepipe additional time to talk to counsel after Whitepipe requested it. When asked, Whitepipe stated that he understood what he was charged with doing, the maximum penalty he faced and the possibility of restitution and court costs being ordered as part of any sentence imposed. Whitepipe indicated that he was ready to enter his plea and proceeded to plead guilty to the rape charge. The court then questioned Whitepipe to determine whether his plea was voluntary:

THE COURT: Did anyone force you to enter that plea?

THE DEFENDANT: No.

THE COURT: Did anyone tell you, other than this plea agreement, that I would give you special treatment if you just came in today and pled guilty?

THE DEFENDANT: No.

THE COURT: And you are doing this under your own free will?

THE DEFENDANT: Yes.

To be constitutionally valid, a guilty plea must be knowing, voluntary and intelligent. *See Parke*, 506 U.S. at 28, 29, 113 S.Ct. 517 (holding that a "guilty plea must be both knowing and voluntary" and must be a "voluntary and intelligent choice among the alternative courses of action" available to a defendant). Because a guilty plea constitutes a waiver of three constitutional rights—the right to jury trial, the right to confront one's accusers, and the privilege against self-incrimination—it must be made "with sufficient awareness of the relevant circumstances and like consequences." *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). While a guilty plea taken in open court is not immune from collateral attack in a postconviction proceeding, a defendant's representations, made during a plea

hearing, carry a strong presumption of verity, *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), and pose a "formidable barrier in any subsequent collateral proceedings," *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir.1985)).

Here, the trial court's plea advisement was sufficient and Whitepipe's responses to the court's inquiries belie the assertions he now makes. The rearraignment transcript, together with Whitepipe's age, education and experience with the criminal justice system convincingly establish that Whitepipe knowingly, voluntarily and intelligently pled guilty.

It is of no moment that Whitepipe was not advised that he would have to register as a sex offender. An overwhelming majority of courts, including the South Dakota Supreme Court, that have considered the issue have concluded that a sentencing court's failure to advise a defendant about registration as a sex offender is not grounds for withdrawal of a guilty plea because registration is a collateral, not a direct, consequence of conviction. *State v. Timperley*, 1999 SD 75, ¶ 17, 599 N.W.2d 866, 869; *Commonwealth v. Leidig*, 2004 Pa.Super. 167, ¶¶ 12–16, 850 A.2d 743, 747–48; *State v. Moore*, 135 N.M. 210, 216–18, 86 P.3d 635, 641–43 (N.M.App.2004); *see also Roe v. Farwell*, 999 F.Supp. 174, 182–83 (D.Mass.1998); *Kaiser v. State*, 641 N.W.2d 900, 902–07 & n. 12 (Minn.2002); *State v. Schneider*, 263 Neb. 318, 324, 640 N.W.2d 8, 13 (2002); *see generally* Licia A. Esposito, Annotation, *State Statutes or Ordinances Requiring Persons Previously Convicted of Crime to Register with Authorities*, 36 A.L.R.5th 161, § 9 (1996). Failure to advise Whitepipe of the registration requirement did not render his guilty plea involuntary or unintelligent so as to require the withdrawal of his plea.

For these reasons, Whitepipe's claim is without merit and must be denied in its entirety.

## XII.

As his seventh claim, Whitepipe asserts that the trial court abused its discretion and violated his due process rights when it ordered a sexual offender evaluation, not mandated by state statute, be included in his presentence investigation report. This claim is unfounded and misapprehends applicable state and federal law.

Whitepipe's presentence report contained a sexual offender evaluation prepared by Dr. Donald A. Janz, a clinical psychologist. The evaluation included a testing process called the Abel Assessment for Sexual Interests. This Assessment indicated that Whitepipe showed a chronic, objectively measured sexual interest in preschool aged females and that he appeared to be "characteristically similar" to men who have molested female children outside of their own families. In this evaluation, Dr. Janz recommended, among other things, that Whitepipe not be allowed to be alone with children under the age of 18 years and that this restriction be revisited after Whitepipe successfully completed sex offender treatment.

Prior to sentencing, Whitepipe filed a motion to exclude Dr. Janz's sex offender evaluation. The trial court subsequently conducted an evidentiary hearing and denied Whitepipe's motion.

Within constitutional and statutory limits, South Dakota state trial courts are given broad discretion when deciding the extent and kind of punishment to be imposed on a criminal defendant. *State v. Grosh*, 387 N.W.2d 503, 508 (S.D.1986). To assist courts in the exercise of their discretion, a presentence investigation report may be ordered containing such in-

formation about the defendant's "characteristics, his financial condition, and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation or in the correctional treatment of a defendant, and such other information as may be required by the court." SDCL 23A–27–6 (1978). SDCL Ch. 23A–27, however, does not limit what information a state trial court can obtain and consider in connection with sentencing, *Grosh*, 387 N.W.2d at 508–09. Rather:

> [T]he sentencing judge may exercise wide discretion with respect to the type of information used as well as its source. He should have full access to the fullest information possible concerning the defendant's life and characteristics. Information which should be available to the court includes general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record. A sentencing judge's access to information should be almost completely unfettered in order that he may acquire a thorough acquaintance with the character and history of the man before him.... The presentence report may rest on hearsay and contain information bearing no relation what[so]ever to the crime with which the defendant is charged. Due process does not require that the scope of information reviewed by the sentencing judge be controlled by the rules of evidence, and consideration of out-of-court information and hearsay evidence is not precluded.

*Id.* (citations omitted).

The fact that the trial court was under the misperception that state law required a sexual offender evaluation for Whitepipe because he had been convicted of rape, is of little, if any, consequence. The court clearly had the authority under state law to order the evaluation, whether it was mandated or not. *See* SDCL 23A–27–6; *Grosh*, 387 N.W.2d at 508–09. And, after conducting a hearing on Whitepipe's motion, the court observed that the Abel Assessment portion of the evaluation was not a diagnostic tool, but rather, was an apparatus to be used for considering treatment options, and for determining the validity of the information supplied by him during his clinical interview. Matters such as these are well within the purview of information that can and should be considered as part of the sentencing process. At worst, given the limited utility of the Abel Assessment noted by the court, any error committed was harmless.

Moreover, in the habeas context, rules of evidence and trial procedure are usually matters of state law and a federal issue is raised only where the alleged error infringes on a specific constitutional protection or is so prejudicial as to amount to a denial of due process. *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir.), *cert. denied*, —— U.S. ——, 127 S.Ct. 725, 166 L.Ed.2d 565 (2006); *see also Evenstad*, 470 F.3d at 783–84. Neither is the case here, as the trial court had discretionary authority to order a sexual offender evaluation under state law, and then made limited use of it. The state supreme court rejected Whitepipe's claim in its summary affirmance of his rape conviction, and the supreme court's decision was neither contrary to nor involved an unreasonable application of, federal law. *See Evenstad*, 470 F.3d at 783–84.

## XIII.

 Whitepipe's eighth and final claim, that he had to plead guilty because of racial animus, is not supported by the record. The State's evidence at trial showed that he committed the rape offense he was charged with and pled guilty to and that Hacker, his victim, was herself, Native

**1110**

American. His testimony that the trial was rigged and racially biased from the beginning of jury selection was not credible, given his own changing stories, and was contrary to the testimony of trial counsel, as the state habeas court found. That court's refusal to accept Whitepipe's contradictory testimony, a factual issue, is entitled to due deference under § 2254(e)(1). Whitepipe's decision to plead guilty was based on the strength of the State's case and his desire to minimize his sentencing exposure. Racial animus and discrimination did not enter into the picture until after the fact (i.e. after his guilty plea was accepted), when "buyer's remorse" evidently set in. Whitepipe's claim is entitled to no more credence now than that which the state courts earlier gave to it—nothing.

### XIV.

Based on the foregoing findings of fact and legal discussion and pursuant to § 636(b) and Rule 8(b) of the § 2254 Rules, it is hereby

RECOMMENDED that Whitepipe's Petition under § 2254 for a writ of habeas corpus be denied in all respects and that the case be dismissed with prejudice.

Dated this 5th day of December, 2006 at Pierre, South Dakota.